Ronald A. WILLIAMS,
P–8467, Appellant,

v.

David A. HEPTING, Assistant District Attorney; Chief Scarfo; Lt. J.F. Widdowson; Cpl. Schueler; Officer Lewis; Officer Hartman; Robert F. Stewart; Gary Archer; Paul Bowser, Jr.

No. 87–3333.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit
Rule 12(6) March 9, 1988.

Decided April 18, 1988.

As Amended May 24, 1988.

Arthur J. Schwab, Pamela J. Grimm, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant.

Thomas J. Madigan, Tighe, Evan and Ehrman, Pittsburgh, Pa., for Chief Scarfo, Lt. J.F. Widdowson, Cpl. Schueler, Officer Lewis & Officer Hartman.

Frank P. Krizner, Co. Sol., Robert F. Hawk, Butler, Pa., for David A. Hepting, Robert A. Stewart, Gary Archer and Paul Bowser, Jr.

Before WEIS*, GREENBERG and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this appeal from the dismissal of a civil rights suit brought by a prisoner, the major question for decision is whether a witness who testifies at a preliminary hearing is entitled to absolute immunity from a subsequent civil rights suit for damages based on allegedly perjured testimony given at those proceedings. We must also decide whether the district court properly abstained from adjudicating certain civil rights claims which, in essence, seek to attack the validity of a state court conviction, while an appeal of that conviction remains pending in state court.

\* The Honorable Joseph F. Weis, Jr. was an active judge at the time this appeal was decided. He

### I.

On the evening of August 5, 1984, Archie S. Bradley was shot to death at the Norsub Trucking Company parking lot in Cranberry Township, Butler County, Pennsylvania. An investigation ensued, resulting in the indictment of Ronald A. Williams and Raymond Williams for first degree murder. On January 24, 1985, a Butler County Common Pleas jury found Ronald Williams and Raymond Williams guilty of first degree murder, and subsequently sentenced them to death. Pursuant to 42 Pa.Cons.Stat. §§ 722(4), 9711(h), the Pennsylvania Supreme Court took an automatic review of both Raymond and Ronald Williams' convictions and death sentences. The court affirmed Raymond Williams' conviction, but overturned his death penalty sentence. *Pennsylvania v. Raymond Williams*, 514 Pa. 62, 522 A.2d 1058 (1987). The court has not yet ruled on Ronald Williams' appeal, but instead has remanded the case to the Butler County Court of Common Pleas for further evidentiary hearings.

On August 13, 1986, Ronald Williams, now a prisoner incarcerated in a state facility, filed this civil rights action under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. His *pro se* complaint set forth a web of constitutional offenses linked to the alleged failure to properly investigate his case, falsification and concealment of evidence, subornation and commission of perjury, and clandestine tampering with members of the jury. As relief, Williams sought compensatory and punitive damages.

### A.

Williams alleged that his constitutional rights were violated by a Butler County assistant district attorney, five Cranberry Township police officers, a prosecution witness, and two members of a Butler County jury during the course of the state criminal investigation and prosecution that resulted in his first degree murder conviction and death sentence. He also alleged that David Hepting—a Butler County assistant district

has now assumed senior status.

attorney—conspired with defendants Scarfo, Widdowson, Schueler, Hartman, and Lewis—Cranberry Township police officers —to "create" the necessary evidence to sustain a murder case against Williams.

Williams said that the defendants conspired against him because he was an ex-felon, black, and believed by the defendants to be guilty. In furtherance of the conspiracy, Hepting, Scarfo, Widdowson, and Schueler allegedly convinced defendant Robert Stewart to falsely identify Williams as the driver of a car that police chased from the scene of the murder on August 5, 1985, and to falsely testify at Williams' preliminary and suppression hearings and trial.

Williams alleged that Hepting and the police officers suppressed exculpatory evidence from their investigation, namely, a handwritten note that related to the scene of the murder. Defendants Hepting, Schueler, Widdowson, and Scarfo, who retained possession of the note as well as samples of Williams' handwriting, allegedly knew that the note handwriting differed from his writing exemplar and that Williams, therefore, could not have prepared the note. Williams charged that the defendants ceased investigating this line of inquiry to deprive him of exculpatory evidence.

He also charged Hepting with concealing evidence about the handwriting exemplars at trial and subsequently stating that the samples and police reports concerning the handwriting investigation did not exist. After Williams' trial, however, Hepting produced the exemplars and reports by order of court. Finally, Williams claimed that Hepting secretly informed defendants Archer and Bowser, two jurors at trial, of Williams' past criminal record in order to prejudice the jury's verdict and obtain a conviction. Archer and Bowser allegedly informed the remaining jurors of Williams' past criminal record prior to the verdict and, according to the plaintiff, persuaded the jury to find Williams guilty.

### B.

The defendants responded to Williams' complaint by filing a Rule 12(b)(6), F.R. Civ.P., motion to dismiss. The district court, adopting the recommendations of the magistrate, granted defendants' motion. The district court determined that prosecutorial immunity applied to Williams' allegations against Hepting, and that witness immunity applied to Williams' allegations against Stewart for his testimony at plaintiff's pretrial hearings and trial.

The court, however, dismissed two claims without prejudice, enabling Williams to refile those claims in federal court after first pursuing them in state court: (1) Williams' allegation that Hepting, Schueler, Scarfo, and Widdowson deliberately failed to investigate an aspect of plaintiff's case because of his race; and (2) his contention that Schueler, Scarfo, and Widdowson induced witness Stewart to falsely identify Williams by arranging a suggestive encounter between the defendant and Stewart shortly before Williams' preliminary hearing.

In ruling on defendants' 12(b)(6) motion, the district court denied Williams' request to file an amended complaint. Williams appeals from the district court's dismissal of his complaint.

### II.

On review of the district court's dismissal of plaintiff's complaint, this court must take all of the well-pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any circumstances, the plaintiff might be entitled to relief. *Rogin v. Bensalem Twp.*, 616 F.2d 680, 685 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *see Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### III.

We turn first to the issue of witness immunity. In his complaint, Williams alleged that witness Robert Stewart deliberately

lied while testifying at plaintiff's preliminary hearing, the suppression hearings, and at trial. The district court dismissed Williams' claim against Stewart based on the doctrine of absolute witness immunity. On appeal, Williams does not challenge the district court's decision regarding Stewart's testimony at trial. Williams contends, however, that the district court erred in granting Stewart absolute immunity for his testimony at the pretrial hearings.

## A.

In *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Supreme Court held that a convicted defendant could not state a claim for damages under 42 U.S.C. § 1983 against a police officer who had allegedly given perjured testimony at the defendant's criminal trial. The Court anchored its ruling on the absolute immunity accorded at common law to witnesses in judicial proceedings, which was based on the need "to avoid intimidation and self-censorship." *Id.* at 341–42, 103 S.Ct. at 1118–19. Section 1983, the Court explained, "did not abrogate the absolute immunity existing at common law." *Id.* at 334, 103 S.Ct. at 1115. In reaching its decision, the Court stressed that a functional analysis governs absolute immunity issues, not the status of an individual. *See also Butz v. Economou,* 438 U.S. 478, 511–12, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978); *Forsyth v. Kleindienst,* 599 F.2d 1203, 1215 (3d Cir.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). It noted that the police officer was entitled to immunity not because of his position in law enforcement, but because he testified as a witness in a judicial proceeding. "A police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury." *Briscoe,* 460 U.S. at 342, 103 S.Ct. at 1119.

Our task here is to decide if the *Briscoe* teaching may be extended to statements made by witnesses prior to trial. Although the Supreme Court has not decided "the question of immunity for testimony at pretrial proceedings," *id.* at 329 n. 5, 103 S.Ct. at 1112 n. 5, seven years before the *Briscoe* holding we extended the concept of common law witness immunity to a witness appearing in federal court. *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir.1976).

█ It is appropriate to review the reasoning we expressed in *Brawer* to determine its applicability to the issue presently before us. We emphasized that common-law witness immunity extends back to Lord Mansfield's comprehensive 1772 formula: "Neither party, witness, counsel, jury, nor judge can be put to answer, civilly or criminally, for words spoken in office." *See* Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum. L.Rev. 463, 474 (1909). While on the New York Court of Appeals, Cardozo embraced Lord Mansfield's formulation; Augustus Hand described it as "practically the universal rule in this country." *See Sacks v. Stecker,* 60 F.2d 73, 75 (2d Cir.1932). *See generally* 1 F. Harper & F. James, *The Law of Torts* § 5.22, at 423–26 (1956). Witness immunity is firmly bottomed in public policy:

> The function of witnesses is fundamental to the administration of justice. The court's judgment is based on their testimony and they are given every encouragement to make a full disclosure of all pertinent information within their knowledge.... "[E]very consideration of public policy requires that they should be as fearless in testifying as the judge and jury are independent in weighing their testimony."

*Brawer,* 535 F.2d at 837 (citations omitted). We think that these policy arguments support the extension of the absolute immunity doctrine to a witness at the pretrial stage of the judicial process.

The overreaching considerations have been expressed in *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978):

> The cluster of immunities protecting the various participants in judge-supervised trials stems from the characteris-

tics of the judicial process rather than its location. As the *Bradley [v. Fisher]* Court suggested, 13 Wall. [335, 348–49, 20 L.Ed. 646 (1872)], controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. See *Pierson v. Ray*, 386 U.S. [547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967)]. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.

Support for extending this policy to witness statements made prior to trial appears to be universal. In *Holt v. Castaneda*, 832 F.2d 123, 125 (9th Cir.1987), the court noted:

> In adversarial pretrial proceedings, as in trials, the witness testifies in court, under oath, under the supervision of the presiding judge and is subject to criminal prosecution for perjury.

Witnesses at trial are afforded absolute immunity to encourage complete disclosure in judicial proceedings. The thought is that witnesses should be encouraged to tell all they know without fearing reprisal, because the tools of the judicial process— rules of evidence, cross-examination, the fact-finder, and the penalty of perjury— will be able to uncover the truth. *See Krohn v. United States*, 742 F.2d 24, 31 (1st Cir.1984). The interest in complete disclosure is no less diminished at the pretrial stage, at a preliminary hearing, or at a suppression hearing. The tools of the judicial process are no less present to ferret out the truth at these times. In addition, the criminal defendant enjoys the immediate right at all stages of the judicial process to submit his or her own evidence and to cross-examine the witnesses.

Nor does the common law appear to distinguish between trial and pretrial testimony for the purpose of according absolute immunity for witnesses. In discussing the history of common law immunity, the Court in *Briscoe* noted that "[t]he immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law." 460 U.S. at 330–31, 103 S.Ct. at 1112–13. Other courts have similarly refused to distinguish between trial and pretrial proceedings in discussing common law immunity. *See Holt*, 832 F.2d at 125; *Charles v. Wade*, 665 F.2d 661, 666 (5th Cir.1982), *cert. denied*, 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983); *Conley v. Office of the Public Defender*, 653 F.2d 1241, 1242 (8th Cir.1981).

### B.

Several courts have extended *Briscoe's* holding to pretrial proceedings. The Courts of Appeals for the Second, Sixth, and Seventh Circuits have applied the rationale of *Briscoe* to conclude that witnesses who testify before a grand jury are absolutely immune from civil liability under section 1983. *See Macko v. Byron*, 760 F.2d 95, 97 (6th Cir.1985); *San Filippo v. United States Trust Co.*, 737 F.2d 246, 254 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985); *Kincaid v. Eberle*, 712 F.2d 1023 (7th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983). In *Briggs v. Goodwin*, 712 F.2d 1444, 1448–49 (D.C.Cir.1983), the court held that a United States Attorney enjoyed absolute immunity for testimony given during grand jury proceedings. "[T]he rationale of *Briscoe* applies with equal force whenever a witness testifies in a judicial proceeding the function of which is to ascertain factual information." *Id.* at 1449. Finally, in *Holt*, the Court of Appeals for the Ninth Circuit noted that "[i]n adversarial pretrial proceedings as well as at trial, absolute witness immunity is essential if the truth-seeking function of the proceeding is to be fully served." 832 F.2d at 127.

Other courts have cited *Briscoe* to extend civil damages immunity to guardians, therapists, and attorneys who provide reports and recommendations to the family court, *Myers v. Morris*, 810 F.2d 1437, 1466 (8th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), and to proba-

tion officers who allegedly include false statements in pretrial bond reports and pre-sentence reports, *Tripati v. INS*, 784 F.2d 345, 348 (10th Cir.1986), *cert. denied*, — U.S. ——, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988). In *Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir.1983), the court applied the doctrine of witness immunity to bar a civil damages claim against a SEC official for submitting to the Commission during the course of a corporate investigation an affidavit that allegedly contained false and perjurious information.

### C.

Yet we are aware that other courts have refused to extend witness immunity to the pretrial setting. *See Anthony v. Baker*, 767 F.2d 657, 663 (10th Cir.1985) (*Briscoe* does not afford absolute immunity for testimony before grand jury); *Wheeler v. Cosden Oil & Chem. Co.*, 734 F.2d 254, 261 (5th Cir.) (absolute immunity does not extend to testimony of state official at probable cause hearing), *modified on different grounds*, 744 F.2d 1131 (5th Cir.1984).

But we do not find the rationales underlying these cases to be persuasive. They do not respond to the public policy considerations that we set forth in *Brawer* and that the Court acknowledged in *Briscoe*. Especially, they do not respond to the reality that "[a] witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence." *Briscoe*, 460 U.S. at 333, 103 S.Ct. at 1114. As the Court of Appeals for the District of Columbia stated in *Briggs:*

> *Briscoe* emphasized the concern that the absence of immunity would interfere with the ability of "judicial proceedings" "to determine where the truth lies." That concern applies not only to trials, but to any judicial proceeding where the testimony of witnesses might be affected by the lack of immunity. Thus, the rationale of *Briscoe* applies with equal force

> whenever a witness testifies in a judicial proceeding the function of which is to ascertain factual information.

*Briggs*, 712 F.2d at 1448–49 (footnotes omitted).

We therefore conclude that witness Stewart is entitled to absolute immunity from civil liability for his testimony at Williams' preliminary hearing and suppression hearings. The district court did not err in dismissing Williams' claims against Stewart for allegedly giving perjured testimony at these hearings.

### IV.

We next turn to the district court's decision to dismiss without prejudice two of Williams' allegations. The magistrate noted that two of Williams' civil rights claims would normally survive a Rule 12(b)(6) motion to dismiss: (1) that Hepting, Schueler, Scarfo, and Widdowson ceased investigating certain aspects of the case because Williams was black, and (2) that Schueler, Scarfo, and Widdowson subjected Williams to a suggestive pretrial encounter to enable Stewart to falsely identify Williams at the defendant's preliminary hearing. However, because these allegations challenged Williams' underlying criminal conviction while a state court appeal was pending, the magistrate determined that the contentions "should at least be stayed until presented to and disposed of by the state courts." App. at 75a.

Instead of staying Williams' claims, however, the magistrate recommended dismissing Williams' allegations without prejudice if the defendants agreed to waive a statute of limitations defense in case Williams elected to refile his claims in federal court within two years after pursuing his state court appeal. Because the defendants filed the requested waiver, the district court dismissed without prejudice Williams' failure-to-investigate and suggestive pretrial identification claims.

### A.

"[A] damages action by a state prisoner [can] be brought under the Civil Rights Act

in federal court without any requirement of prior exhaustion of state remedies." *Preiser v. Rodriguez,* 411 U.S. 475, 494, 93 S.Ct. 1827, 1838, 36 L.Ed.2d 439 (1973); *see also Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Some courts, however, have developed a limited exhaustion requirement when a civil rights damages action challenges the fact of confinement by attacking the underlying criminal conviction that caused the confinement. *See Martin v. Merola,* 532 F.2d 191, 194–95 (2d Cir.1976); *Fulford v. Klein,* 529 F.2d 377, 378 (5th Cir.1976), *aff'd en banc,* 550 F.2d 342 (5th Cir.1977); *Guerro v. Mulhearn,* 498 F.2d 1249, 1252–55 (1st Cir.1974). "Where the federal court, in dealing with the question of damages caused by violation of civil rights, would have to make rulings by virtue of which the validity of a conviction in contemporary state proceedings would be called in question, the potential for federal-state friction is obvious. The federal ruling would embarrass, and could even intrude into, the state proceeding." *Guerro,* 498 F.2d at 1253; *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In *Tower v. Glover,* 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984), the Court recognized the line of cases requiring a district court to abstain from deciding a section 1983 action for damages stemming from an unlawful conviction pending the collateral exhaustion of state court attacks on the conviction itself, but noted that under the facts of that case it was not required to decide the issue. Similarly, in *Davis v. Rendell,* 659 F.2d 374, 378 (3d Cir.1981), we were not required to decide "whether exhaustion should be required in a damage action where the basis of the claim will in some manner suggest the invalidity of the plaintiff's criminal conviction." Most recently, in *Harper v. Jeffries,* 808 F.2d 281, 285 (3d Cir.1986), we recognized that when factual and legal issues inherent in section 1983 and habeas corpus actions overlap, a federal court's premature adjudication of the section 1983 case would interfere with congressional policy requiring initial resort to state tribunals in habeas corpus petitions:

To accommodate these concerns, it would be proper for the district court to stay Harper's section 1983 action until he has had an opportunity to exhaust all state remedies on his habeas corpus claim. If, after exhaustion, Harper still has not received any relief, his petition for habeas corpus and his section 1983 claim could then be heard together in federal district court.

▮ In the present case, Williams' civil rights claims seek, in essence, to attack the validity of his state court conviction. Yet, an appeal of Williams' conviction and death penalty sentence is currently pending before the Pennsylvania Supreme Court. *See* app. at 40a–43a. Under these circumstances, the potential for federal-state friction is obvious. The district court can avoid that friction by abstaining from deciding Williams' allegations until the Pennsylvania Supreme Court has had a complete opportunity to review the circumstances surrounding Williams' indictment and conviction. We therefore agree with the district court's decision to abstain from currently deciding Williams' allegations that attack the validity of his state court conviction, until they are presented to and disposed of by the state courts.

### B.

Yet we disagree with the procedure employed by the district court in avoiding premature adjudication. Williams' civil rights claims seek damages, relief that is unavailable from his ongoing state proceedings. We have required the district court to stay rather than dismiss claims that are under consideration in ongoing state proceedings. *See Monaghan v. Deakins,* 798 F.2d 632, 635 (3d Cir.1986), *aff'd in relevant part,* — U.S. ——, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *Crane v. Fauver,* 762 F.2d 325, 328–29 (3d Cir.1985). In *Monaghan,* we stated that "a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not avail-

able from the ongoing state proceedings." 798 F.2d at 635.

In *Deakins v. Monaghan,* —— U.S. ——, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), the Supreme Court reviewed our decision in *Monaghan.* Although vacating a portion of our judgment on mootness grounds, the Court proceeded to pass on the propriety of our "must stay" rule. It determined that when abstention is required, "the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." —— U.S. ——, 108 S.Ct. at 529. Noting that the rule promulgated by this court "is sound," the Court recognized that staying claims for monetary relief that are unavailable in ongoing state proceedings "allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts 'to assume jurisdiction where jurisdiction properly exists.' " *Id.* (citation omitted).

Accordingly, we hold that the district court should have stayed instead of dismissed without prejudice Williams' failure-to-investigate and suggestive pretrial identification claims. Because these particular federal court claims for damages seek relief that is unavailable in Williams' ongoing state proceedings, the allegations should be stayed pending the outcome of his state court appeal on the underlying conviction.

## V.

We have considered the remaining contentions raised by appellant and do not believe that the district court's treatment of them amounted to reversible error, *viz.,* that appellant alleged facts sufficient to establish a conspiracy among the police officers, that the district court abused its discretion in denying a request to amend the complaint, and that it erred in applying the teachings of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), to the actions of prosecutor Hepting, and in determining that the conduct of the police officers did not constitute the proximate cause of Williams' injury.

## VI.

We will affirm the judgment of the district court in all respects, except that we will remand the cause to allow the court to amend its order that dismissed the allegations without prejudice described in Part IV.B. to provide that the consideration of these issues is stayed pending the outcome of appellant's state court proceeding.