Jeffry A. EPSTEIN, Individually, Jeffry A. Epstein and William M. Berger, Partners, t/a Seventh Street Joint Venture, and Berger–Epstein Associates, Inc., Plaintiffs,

v.

The TOWNSHIP OF WHITEHALL, Michael P. Harakal, Jr., Gerald J. Fabian, John C. Wieand, Elizabeth L. Buchmiller, Clair Hunsberger, and Linda Snyder, Defendants.

Civ. A. No. 88–0534.

United States District Court, E.D. Pennsylvania.

Aug. 22, 1988.

James T. Huber, Allentown, Pa., for plaintiffs.

Jeffrey Matzkini, Allentown, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Presently before us in the above-captioned action is the defendants' Motion To Dismiss the plaintiffs' Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6). Since both parties have submitted evidence in support of their respective positions outside the only pleading of record, *i.e.*, the plaintiffs' Complaint, we have, as required by Fed.R. Civ.P. 12(b), treated the defendants' Mo-tion, where appropriate, as one for summary judgment pursuant to Fed.R.Civ.P. 56.

The plaintiffs instituted this action pursuant to 42 U.S.C. § 1983 claiming that the defendants had deprived them of a number of rights secured to them by the Constitution of the United States. Specifically, the plaintiffs aver that the defendants: (1) deprived them of their rights under the Fourteenth Amendment to "substantive due process" and "equal protection of the laws" and (2) violated the Contracts Clause of the Constitution, U.S. Const. art. I, § 10, cl. 1. Jeffry Epstein also asserts a pendent state law claim against defendant Whitehall Township for breach of contract.[1]

The plaintiffs' action has its origin in their desire to develop a parcel of land located in Whitehall Township. The individual defendants, with the exception of Michael P. Harakal, Jr., served as the members of the Township's Board of Commissioners, the municipality's legislative body. Mr. Harakal served as the Township Executive. According to the facts of record, Jeffry A. Epstein is the owner of the realty in question. Epstein, as owner of the property, at some point in the past executed an agreement with a partnership consisting of himself and William A. Berger for the development of a shopping center to be known as "MacArthur Square". The partnership, trading as "Seventh Street Joint Venture", in turn, executed an agreement with Berger–Epstein Associates, Inc., under which the corporation would act as the partnership's agent in the development, leasing and management of the shopping center.

On May 14, 1985, Epstein and Berger–Epstein Associates, Inc., petitioned the Township pursuant to the Township's "Subdivision and Land Development Ordinance" for approval of the construction of MacArthur Square. On December 28, 1987, defendants Fabian, Wieand, Buchmiller, Hunsberger and Snyder voted to deny

1. The defendants in their Motion to Dismiss also addressed the possibility that the plaintiffs were asserting a claim that they had been deprived of their property without just compensation in violation of the Fifth and Fourteenth Amendments to the Constitution. The plaintiffs, however, have conclusively stated that they are asserting no such cause of action. *See* plaintiffs' response to defendants' Motion to Dismiss, Doc. #3, p. 35.

approval of the plan submitted by the plaintiffs, despite the fact that the Township's "Planning Commission" had recommended that the plan be approved, though subject to certain conditions. *See* defendants' Motion To Dismiss, Doc. # 2, Ex. "5" attached thereto.

I. Plaintiffs' § 1983 claims.

A. *Lack of factual specificity.*

The defendants first argue that the plaintiffs' Complaint should be dismissed because it fails to set forth with the requisite factual specifity the "facts" upon which the plaintiffs' rely to support their claims that the defendants deprived them of one or more of their constitutional rights. This argument possesses no merit. A review of the plaintiffs' Complaint demonstrates that they have alleged, with excruciating detail, the facts upon which they rely to support their claims under § 1983. Given the detail with which the plaintiffs have pleaded their case, to place any additional burden upon them would require that they prove their case by way of their Complaint. The law of this Circuit requires no such result. *See, e.g., Freedman v. City of Allentown,* 853 F.2d 1111 (3d Cir.1988).

B. *Failure to state a claim.*

The defendants next argue that the plaintiffs' § 1983 claims should be dismissed for failure to state a claim upon which relief may be granted. Citing Justice Stevens's concurring opinion in *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the defendants assert that, since the plaintiffs do not allege that they were deprived of procedural due process and only attack the correctness of the Commissioners' decision, they possess no cause of action under the Due Process Clause of the Fourteenth Amendment. The defendants' argument, however, flies in the face of the plaintiffs'

allegations that the Board of Commissioners denied approval to their plan for the construction of MacArthur Square for reasons totally unrelated to the question of whether the Plan did or did not comply with the Township's Subdivision and Land Development Ordinance. The plaintiffs aver that the defendant Commissioners voted to deny the plan approval because they refused to waive their rights, if any, under a contract the Township had executed with a corporation known as DML Realty in 1965.[2] As was recently stated by the Third Circuit Court of Appeals,

> (where a plaintiff) present(s) evidence from which a fact finder could reasonably conclude that certain council members, acting in their capacity as officers of the municipality improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits(,) (t)hese actions can have no relationship to any legitimate government objective, and if proven, are sufficient to establish a substantive due process violation actionable under section 1983.

*Bello v. Walker,* 840 F.2d 1124, 1129–1130 (3d Cir.1988), *petition for cert. filed,* 56 U.S.L.W. 3850 (U.S. May 28, 1988) (No. 87–1968).

Here, it may be argued that the plaintiffs have failed to state a claim for deprivation of their right to substantive due process because, although the defendants may have conditioned approval of the plaintiffs' development plan upon fulfillment of a requirement not found in the Township's Subdivision and Land Development Ordinance, *viz.,* the plaintiffs' waiver of whatever contractual rights they may have under the 1965 Whitehall Township–DML Realty agreement, the plaintiffs make no allegation that the defendants imposed this requirement upon them for partisan political or personal reasons.[3] Absent

---

2. The Whitehall Township–DML Realty agreement shall be discussed further *infra.*

3. The plaintiffs allege in their Complaint that, "on several occasions immediately prior to the

public meetings" held by the Township Board of Commissioners regarding the proposed MacArthur Square shopping center, "the individual defendants met privately with the chief objector to the project." Plaintiffs' Complaint, Doc. # 1,

such allegations, the only inference which may be drawn from the facts alleged in the plaintiffs' complaint is that the defendants imposed the "waiver" condition upon the plaintiffs' plan solely for the "benefit" of the citizens of Whitehall Township as a whole. As a result, the question we face is what effect do such "altruistic" motives have upon the plaintiffs' substantive due process claim.

In *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir.1986), the City's motivation in imposing "illegal" conditions upon the grant of a building permit, *i.e.,* conditions not authorized by the land use law in question, appeared to have no relevance to the Eighth Circuit's analysis of whether the plaintiffs had stated a substantive due process claim. The City in *Littlefield* had conditioned its approval of the subdivision sought by the plaintiffs upon their dedication of a public right of way across their property to provide access to a neighboring land-locked parcel of land. The plaintiffs brought suit in federal court claiming, *inter alia,* that the City's action was arbitrary, capricious and illegal, and therefore, deprived them of their right to substantive due process. The Eighth Circuit, in concluding that the plaintiffs had stated a substantive due process claim, made no reference to any allegations of maliciousness, bias or bad faith on the part of the City; rather, the imposition of a condition unauthorized by the City's ordinance appears to have supplied the critical factor in the Court's analysis. A similar result appears to have been reached by the Eleventh Circuit Court of Appeals based on its conclusion that the "imposition of requirements, not included in the ordinance, upon an applicant for a permit violates substantive due process". *Id.* at 606, *citing Southern Cooperative Development Fund v. Driggers,* 696 F.2d 1347, 1356 (11th Cir.), *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *but see, Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied,* 459

U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) ("... property is not denied without due process of law simply because a local planning board rejects a proposed development for erroneous reasons *or makes demands which arguably exceed its authority under the relevant state statutes.*") (Emphasis added.) and *Chiplin Enterprises v. City of Lebanon,* 712 F.2d 1524, 1527–1528 (1st Cir.1983) ("it is axiomatic that not every violation of a state statute amounts to an infringement of constitutional rights ... The claim that denial of the permit was improperly motivated, unsupported by an allegation of the deprivation of a specific constitutional right, simply raises a matter of local concern, properly and fully reviewable in the state courts ... 'even the outright violation of state law by local officials' in denying a license does not automatically raise a federal claim ... A mere bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct the error.")

We believe that the focus certain courts have placed upon the "motivations" of local bodies which administer land use laws in denying permits results in a loss of sight of the forest for the trees. As noted by the Third Circuit in *Bello v. Walker,* the "touchstone of due process is protection of the individual against arbitrary action of the government". *Bello,* 840 F.2d at 1129, *quoting Davidson v. Cannon,* 474 U.S. 344, 353, 106 S.Ct. 668, 673, 88 L.Ed.2d 677 (1986). The test for determining whether government conduct is "arbitrary" is whether the law or action in question is rationally related to a legitimate government interest. *See, e.g., Bannum v. City of Memphis,* 666 F.Supp. 1091, 1093 (W.D. Tenn.1987). While the existence of bias, bad faith or improper motive may be an excellent indicator of arbitrary government conduct, we do not believe that the absence of such an improper motive *ipso facto* ren-

---

¶ 24. They make no allegation, however, that the defendants denied their plan approval at the behest of this individual or solely for his/her benefit, economic or otherwise. Absent such allegations, we do not believe that this "charge" can in any way support the plaintiffs' claim that they were deprived of their right to substantive due process.

ders the government action in question rational and non-arbitrary.

In this instance, we believe that we must focus upon the question of whether the condition the Whitehall Township Board of Commissioners imposed upon its approval of the plaintiffs' development plan in any way furthered a "legitimate government interest". The plaintiffs, as stated earlier, make no allegation that the Board of Commissioners acted out of self-interest or for the benefit of, *e.g.*, a potential competitor of the plaintiffs. We must, therefore, infer that the Board acted solely for the benefit of the citizens of Whitehall Township at large, *i.e.*, they sought to prevent the Township from incurring substantial monetary expenses should it be determined that the Township is obligated under the 1965 Whitehall Township–DML Realty agreement, as the plaintiffs claim, to pay for the construction of the sewer and traffic light systems necessary to serve the plaintiffs' proposed shopping center. The fact that the Board may have acted in the best interests of the Township's citizens does not render those interests "legitimate", however. This is particularly true since whatever fiscal interests may have motivated the Board are totally unrelated to the Township's interests in regulating the use of land within its boundaries. Accepting, as we must, as true the plaintiffs' allegations that the plan they submitted to the Township fully complied with its Subdivision and Land Development Ordinance and that the Board of Commissioners denied their plan approval solely because they would not waive whatever rights they have under the 1965 Whitehall Township–DML Realty agreement, we can only infer that the Board's action constituted nothing more than an attempt to extort concessions from the plaintiffs which were totally unrelated to any interest the Township had in land use planning.[4] Given this set of circumstances, we find that the plaintiffs have sufficiently stated a claim for depriva-

tion of their right to be free from arbitrary, abusive and irrational government conduct.

Our resolve that the plaintiffs have sufficiently stated a claim for deprivation of their right to substantive due process is strengthened by the Third Circuit's statement in *Bello v. Walker* that said case differed from *Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023 (3d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987), because the plaintiff in *Pace* did "not present a case involving actions aimed at (the) developer for reasons unrelated to land use planning". *Bello*, 840 F.2d at 1129, *quoting Pace Resources*, 808 F.2d at 1035. While this case apparently does not involve the "egregious" type of conduct faced by the Third Circuit in *Bello*, we believe that the plaintiffs' allegations sufficiently demonstrate that the defendants did not act to further any legitimate government interest the Township may have had in land use planning. As in *Bello*, the individual defendants acted for reasons totally unrelated to the merits of the plan submitted by the plaintiffs. This case does not involve a simple disagreement over the proper interpretation of the Township's Subdivision and Land Development Ordinance or a difference of opinion on how much development is in the best interest of the Township and how that quantum of development should best be achieved. *See Pace Resources*, 808 F.2d at 1035.

■ We also find that the plaintiffs have sufficiently pleaded a claim for deprivation of their right to equal protection of the laws. The plaintiffs in their Complaint aver that the defendants treated them differently from an adjoining property owner by requiring them to "accept responsibility for all upstream storm water runoff", plaintiffs' Complaint, Doc. #1, ¶ 35, while not imposing a similar requirement upon the adjoining landowner. The defendants

---

4. In making this statement, we reiterate that as to the plaintiffs' allegations that their plan complied with the Township's Ordinance and that the Board denied their plan approval solely because the plaintiffs would not waive their rights under the 1965 Whitehall Township–DML Real-

ty agreement, we must accept those allegations as true. It remains to be seen whether the plaintiffs will be able to adduce sufficient facts to support those allegations in order to survive summary judgment, and thereafter, to convince a jury of their basis in fact.

in their Motion to Dismiss argue that there was a rational basis for imposing such a requirement upon the plaintiffs. The defendants' contention may ultimately prove true; however, we cannot accept the assertions set forth in their memorandum of law in support of their Motion as facts. Since the defendants, as to this point, rely upon nothing other than the allegations contained in the plaintiffs' Complaint, we must, as stated earlier, accept those allegations as true. Doing so, we conclude that the plaintiffs have sufficiently stated a claim that the defendants violated the Equal Protection Clause of the Fourteenth Amendment.

Finally, we need render no decision at this point as to whether the plaintiffs have stated a claim that the defendants violated the Contract Clause of the Constitution by conditioning their approval of the plaintiffs' development plan upon the plaintiffs' waiver of their rights under the Whitehall Township–DML Realty agreement. The defendants make no specific reference to the plaintiffs' Contract Clause claim either in their Motion to Dismiss or their memoranda of law in support thereof, and we see no reason to hazard these seemingly murky waters on our own.

In sum, we find that the plaintiffs have sufficiently stated claims against the defendants under the Due Process and Equal Protection Clauses of the Fourteenth Amendment as well as under the Contract Clause of Article I.

### C. *Legislative immunity.*

The individual defendants next argue that the plaintiffs' claims under § 1983 should be dismissed as to them based on their claimed entitlement to "absolute legislative immunity" from liability for their acts of which the plaintiffs complain.

■ It is indeed true that the individual defendants are entitled to absolute immunity from liability under § 1983 for those actions they take while functioning in their traditional legislative capacity. *See Donivan v. Dallastown Borough,* 835 F.2d 486 (3d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988). As stated by the Third Circuit Court of Appeals in *Donivan,* since not all activity by local legislators such as the individual defendants [5] is "legislative", we must focus upon the "mode" in which the individual defendants exercised their legislative authority, *i.e.,* whether their denial of the plaintiffs' plan for the development of MacArthur Square "represented activity within a legislative capacity allowing the immunity to attach". *Donivan,* 835 F.2d at 488.

■ Applying these principles to the facts as alleged in the plaintiffs' Complaint, it is clear that the individual defendants were not acting in a legislative capacity when they voted to disapprove the plaintiffs' development plan. They were not voting upon passage, amendment or rescission of an ordinance which generally applied to all Whitehall Township residents or those wishing to develop land within the Township; rather, the Board of Commissioners was purportedly taking an ordinance, already enacted, and applying it to but a single plan for development of a shopping center. The individual defendants in such a situation can only be deemed to have been acting in an administrative capacity. Thus, they are clearly not entitled to legislative immunity as to the plaintiffs' constitutional claims. *See, e.g., Scott v. Greenville County,* 716 F.2d 1409 (4th Cir.1983) and *Detz v. Hoover,* 539 F.Supp. 532 (E.D.Pa.1982).

### II. The pendent state law claim.

Jeffry Epstein, in addition to his § 1983 claims, asserts a pendent state law claim against Whitehall Township for breach of contract. Epstein alleges that on April 12, 1965, the Township and DML Realty Co. entered into an agreement which obligates the Township to provide storm water facilities "of adequate size and construction to

---

**5.** Included among the individual defendants is the "Township Executive". Based on our conclusion that none of the other individual defendants who served as members of the Township's Board of Commissioners are entitled to legislative immunity, it is not necessary that we distinguish between the Township Executive and the Commissioners.

properly service the premises of DML in its completed state" and "to pay the cost for all" traffic control devices and channelization necessary for use of the premises. Plaintiffs' Complaint, Doc. # 1, ¶¶ 17 and 44–46 and Ex. "A" attached thereto. Epstein avers that, through a number of intrafamilial conveyances of the parcel of land in question, he has become, as to the 1965 agreement, the "successor in interest" to DML Realty Co. *Id.* at ¶ 19; *see also,* affidavit of Jeffry A. Eptein, Doc. # 3, ¶¶ 4–12.

The defendants contend that we should dismiss Epstein's breach of contract claim because: (1) he lacks standing to assert any breach of the 1965 agreement; (2) the applicable statute of limitations has run; and (3) he has failed to state a claim for breach of contract.

 The defendants argue that because Epstein has failed to specifically allege the facts upon which he relies to support his claim that he is the "successor in interest" to DML Realty Co.'s rights under the 1965 agreement, we should dismiss his breach of contract claim. Initially, we note that the specificity requirement applicable to § 1983 actions in this Circuit does not apply to a pendent state law claim for breach of contract. As to such a claim, a plaintiff need only satisfy the substantially less burdensome requirements of federal notice pleading. We believe that the allegations contained in the plaintiffs' Complaint more than adequately provide the defendants with notice of the nature of Epstein's claim for breach of contract.

 We also believe that it would be improper to dismiss Epstein's claim for breach of contract at this stage given the evidence he has adduced in opposition to the defendants' Motion to Dismiss. The evidence to which we refer is the "deed trail" produced by Epstein showing how he came to be the owner of the property previously owned by DML Realty and upon which the plaintiffs wish to construct a shopping center. *See* affidavit of Jeffry A. Epstein, Doc. # 3, and exhibits attached thereto. According to the plaintiffs, the "contractual benefits" of the 1965 agree-

ment "attached to the land", and as the present owner of the property, those benefits inure to Jeffry Epstein. Whether this contention presents a valid legal theory remains to be seen. We do not believe, however, that we should address this issue at this stage of these proceedings.

 We likewise find no merit in either the defendants' argument that Epstein's breach of contract claim should be dismissed on statute of limitations grounds or their contention that he has failed to properly state a claim for breach of contract. The defendants, as to both of these arguments rely upon facts outside of the plaintiffs' Complaint and as to which the plaintiffs' have not had an adequate opportunity to rebut given the lack of discovery in this matter. At a minimum, the plaintiffs are entitled to further develop the factual record in this case before they respond to the defendants' contentions on these points.

### III. Abstention.

The defendants final argument is that we should abstain from hearing the plaintiffs' constitutional claims based on the pendency of related state court proceedings, and, pursuant to the doctrine of abstention, dismiss the plaintiffs' Complaint.

 Initially, we note that even if we agreed with the defendants that one or more of the principles of abstention applied here, we could not simply dismiss the plaintiffs' Complaint since it is arguable that some matters may remain for resolution by this Court after the plaintiffs' state court action has concluded; rather, we would stay these proceedings while the plaintiffs' state court action proceeded forward. *See Ingersoll–Rand Financial Corp. v. Callison,* 844 F.2d 133 (3d Cir.1988) and *Williams v. Hepting,* 844 F.2d 138 (3d Cir. 1988). Given our conclusion that it would be improper for us to abstain from hearing the plaintiffs' claims under the facts presented, however, we need not even decide this issue.

The defendants, citing *Meredith v. Talbot County, Maryland,* 828 F.2d 228 (4th

Cir.1987), base their argument upon the abstention principles enunciated by the Supreme Court in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (Pullman abstention) and *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (Burford abstention). *See Ingersoll–Rand Financial Corporation v. Callison*, 844 F.2d at 136 n. 3. In response, the plaintiffs, citing the Third Circuit's decision in *Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743 (3d Cir.), *cert. denied*, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982), argue that neither the *Burford*-type nor the *Pullman*-type abstention should be applied here.

■ *Pullman* abstention clearly has no application to this case since there is no unsettled question of state law involved. The only issue before the Pennsylvania state courts is whether there is substantial evidence to support the findings upon which the Board of Commissioners based its denial of approval for the plaintiffs' proposed plan for the development of a shopping mall. As far as the Township's Subdivision and Land Development Ordinance is concerned, the state law involved in this case is settled.

The question of whether we should abstain from hearing the plaintiffs' constitutional claims on the basis of *Burford* presents a much more difficult question. We do not find the Third Circuit's decision in *Heritage Farms* as so clearly applicable to this case as do the plaintiffs. The Third Circuit in *Heritage Farms* was faced with a factual scenario similar, though by no means identical, to that before us. The plaintiffs in *Heritage Farms* alleged that the defendants had, *inter alia*, denied them building permits and governmental approval for their development projects pursuant to a conspiracy to prevent the plaintiffs from competing with the defendants' private business interests. In concluding that the district court had abused its discretion in abstaining from hearing the plaintiffs' constitutional claims, the Third Circuit stated that the plaintiffs' allegations of pervasive corruption, fraud, and malevolent and

illegal conduct rendered *Burford*-type abstention inapplicable to the case since such allegations made the action something more than just a simple land use case. The Third Circuit stressed, however, that the question of whether a district court should abstain in such cases presented a fact-sensitive issue which requires that district courts carefully examine the plaintiff's allegations to determine the essence of the claim. The Court stated that, "If it is an unlawful conspiracy like the one alleged (in *Heritage Farms*), the mere presence of land use issues should not trigger a mechanical decision to abstain." 671 F.2d at 748. The Third Circuit, on the other hand, also stated that district courts are not "state-wide Board(s) of Zoning Appeals." *Id., quoting Kent Island Joint Venture v. Smith*, 452 F.Supp. 455 (D.Md.1978).

As stated earlier, the plaintiffs in *Heritage Farms* alleged that the individual defendants had voted to deny their applications for building permits in order to preclude the plaintiffs from competing with the individual defendants' private business interests. There are no allegations in this case that the individual defendants acted in order to advance their own, personal economic interests. Thus, to this extent, *Heritage Farms* is factually distinguishable from this action. Our inquiry does not end here, however. A second point made by the Third Circuit in *Heritage Farms* was that Pennsylvania's Municipalities Planning Code, Pa.Stat.Ann. tit. 53 § 10101 *et seq.*, the state statute which authorized Whitehall Township to adopt its Subdivision and Land Development Ordinance, does not involve the type of uniform and elaborate statewide regulation which was involved in *Burford*. Pennsylvania, based on the very nature of its Municipalities Planning Code, has no uniform state policy for land use and development. Thus, as in *Heritage Farms*, "there is no danger that a federal court decision in this case will disrupt Pennsylvania's policies or plans with respect to land use." *Heritage Farms*, 671 F.2d at 747.

■ Given the allegations of the plaintiffs' Complaint, particularly their charge

that the individual defendants expressed their intention to approve their development plan so long as the plaintiffs waived whatever rights they might possess under the 1965 Whitehall Township–DML Realty Agreement, and the fact that Pennsylvania has no interest in establishing a uniform land use policy, we find that *Burford* does not require that we abstain from adjudicating the plaintiffs' constitutional claims in this action. Though this case certainly presents a very close question of whether we should abstain, we believe that this action does present something more than a simple land use case. We pause to note, however, that our conclusions, both as to whether the plaintiffs have stated a claim for deprivation of their right to substantive due process and that *Burford* abstention does not apply here, are subject to further review once the factual record in this case has been developed. As previously stated, we have for the most part had to rely upon the allegations of the plaintiffs' Complaint in assessing the nature of the plaintiffs' claims. A question remains, of course, as to whether those allegations will be borne out through the process of discovery.

■ Finally, to the extent that the defendants' abstention argument is nothing more than a claim that the plaintiffs should be required to exhaust their state court remedies, their assertions have no legal basis. *See Williams v. Hepting, supra.* The fact that the plaintiffs may be able to obtain some relief from the defendants' action in state court does not negate their claim that the defendants actions deprived them of their right to *substantive*, as opposed to *procedural,* due process. *See* Schwartz, *The Postdeprivation Remedy Doctrine of Parrat v. Taylor and Its Application To Cases of Land Use Regulation*, 21 Ga.L.Rev. 601 (1987).

## ORDER

AND NOW, this 22nd day of August, 1988, upon consideration of: (1) the defendants' Motion to Dismiss, Doc. # 2, and the plaintiffs' response thereto, Doc. # 3, and (2) defendants' Motion For Protective Order, Doc. # 4, and the plaintiffs' response thereto, Doc. # 5, IT IS ORDERED that:

(1) defendants' Motion to Dismiss is DENIED and the defendants' shall file an answer to the plaintiffs' Complaint within twenty (20) days of the entry of this Order on the record by the Clerk of this Court, and

(2) defendants' Motion For Protective Order, Doc. # 4, is DENIED.