Paul J. McARDLE, Plaintiff,

v.

Michael J. TRONETTI and Steven Reilly, Defendants.

Civ. A. No. 91–74 ERIE.

United States District Court,
W.D. Pennsylvania.

Aug. 1, 1991.

Paul J. McArdle, pro se.

Mark E. Mioduszewski, Francis J. Klemensic, Erie, Pa., for defendants.

## MEMORANDUM OPINION

### I.

Conventional wisdom provides that "just because you are paranoid, it doesn't mean that they aren't out to get you." And so it goes with the travails of plaintiff Paul McArdle, Esquire. Mr. McArdle has been diagnosed as a paranoid schizophrenic, and although he ardently challenges that diagnosis at every opportunity, his tale is an apophasistic account of no less than seven otherwise venerable citizens who abused, harassed and persecuted him for no reason whatsoever. Among them are the two de-

fendants, Dr. Tronetti and Mr. Reilly. By the conventional wisdom we cannot say that he was not maltreated, but under the Federal Rule of Civil Procedure 12(b)(6) and 42 U.S.C. § 1983, we must hold that he has not yet stated a claim. The sagacity of the opening aphorism is neatly demonstrated, however, when it is recognized that McArdle has not failed to state a claim because he was not wronged, but because the defendants here were cloaked with an immunity that allowed them to act with impunity.[1] We summarize Mr. McArdle's own portrait of his tribulations below.

First, he presented himself at the office of Erie's Mayor, Joyce Savocchio, where she mistreated him with respect to some parking tickets. Then he was "falsely charged"[2] with disorderly conduct by a police officer based on his conduct at the Mayor's office. The charges lead to a hearing before a magistrate which "resulted in a misfinding of guilt." Then, on "appeal," the implacable Judge Shad Connelly of the Court of Common Pleas unconstitutionally increased the penalty to the maximum allowed (90 days). At the same time, though he was "surely not warranted" in doing so, Judge Connelly ordered that McArdle undergo psychiatric evaluation in prison. McArdle entered Erie County Jail on November 8, 1990, and soon thereafter, the mephistophelian osteopath, Dr. Tronetti, conducted a twenty minute interview from which he diagnosed Mr. McArdle as paranoid and schizophrenic. Naturally, "he was grossly in error in even suggesting that McArdle was afflicted with psychiatric disease." "My pulse, as yours," we almost hear McArdle bemoan, "doth temperately keep time, And makes as healthful music. It is not madness That I have utter'd: bring me to the test." Shakespeare, Hamlet, Act III, scene iv, line 140. In spite of his protestations, psychoactive medication was promptly prescribed by the osteopath, and when McArdle refused to take it, he was transferred to a cell-only lock-up and Tronetti's trusted

---

1. Mr. McArdle also failed to allege any violation of the Eighth Amendment.

2. Except where indicated, these quotations are taken from plaintiff's brief in opposition to the pending motion.

adjuvant and prison counsellor, Steven Reilly, instituted commitment proceedings based upon allegations with "absolutely no ground in fact." Commitment hearings were held in front of Lee Fuller, Esq., according to McArdle, "a supposed master." But, as could by now be expected, Mr. Fuller was also a pernicious character unjustifiably hostile to Mr. McArdle; he "cut short McArdle's interrogation on matters plainly relevant and material to the issues raised by the petition." Judge Connelly issued an order based on the hearing and McArdle was transferred from Erie County Jail to the Warren State Hospital on December 13, 1990.[3]

Notwithstanding a seemingly fanciful quality in the chronicle of these iniquities, the conduct of the defendants may well have been grossly substandard. Though we do not consider affidavits or other evidence in reaching our decision on this, a 12(b)(6) motion, the court notes that the affidavit of Dr. Jonathan Himmelhoch, a full professor of psychology at the University of Pittsburgh School of Medicine as well as a scholar and author of over 65 articles, offers a thoroughly scathing indictment of Tronetti's methods, his diagnosis, as well as his professional competence. Even if Dr. Himmelhoch is correct, however, McArdle's current allegations do not defeat the immunity which shelters both defendants.

Mr. McArdle is an attorney representing himself in this action under 42 U.S.C. § 1983. He claims that Reilly and Tronetti purposefully conspired to have him wrongfully committed, and that such actions violated his "rights to due process of law and equal protection of the laws."[4] Defendants have each moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) and accordingly, we accept all allegations and make all inferences in favor of Mr. McArdle. Fed.R.Civ.P. 12(b)(6); *D.P. Enterprises v. Bucks County Community*

*College*, 725 F.2d 943, 944 (3d Cir.1984); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The motions are based primarily on the ground that Tronetti and Reilly are protected by the absolute witness immunity of *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). We agree with the defendants and we will grant their motions. As we explain below, however, the facts as alleged might give rise to claims under the Eighth Amendment to the Constitution.

## II.

To recover under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that the defendant acted under color of state law, and (2) that such actions deprived plaintiffs of a constitutionally protected right. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir.1985). The crux of McArdle's complaint is that Reilly and Tronetti conspired to adduce false testimony and diagnoses in order to lock him up in a mental institution. We may safely assume that both defendants acted under color of state law and that McArdle possessed a protected liberty interest in remaining in the prison rather then a mental institution. See *Vitek v. Jones*, 445 U.S. 480, 493–94, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980); *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990).

According to McArdle, the deprivation here was effected by means of unscrupulous diagnostic technique and false testimony at a commitment hearing. Normally, a state actor's deliberate use of false testimony to secure a restriction on a person's freedom violates due process. E.g., *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). But see *Freeman v. Rideout*, 808 F.2d 949 (2d Cir.1986); *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir.1984).[5] That, of

---

**3.** McArdle was returned to the Jail on January 3, 1991, and paroled soon thereafter by Judge Connelly.

**4.** Plaintiff did not pursue an equal protection claim, and so we address only due process issues.

**5.** Some fairly recent Supreme Court jurisprudence reminds us that it is not the fact of a deprivation, but the deprivation *"without due process of law,"* which gives rise to the constitutional violation. *Parratt*, 451 U.S. at 536–37, 101 S.Ct. at 1913–14; *Zinermon v. Burch*, 494 U.S.

course, is an entirely different question from whether the responsible parties are subject to financial liability for causing the due process violation. In fact, even if they worked the denial of due process, the defendants here are protected from financial liability by the amalgam of three overlapping principles of immunity: witness immunity, see *Briscoe, supra,* quasi-judicial immunity, see *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and prosecutorial immunity. See *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Burns v. Reed,* — U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

■ In order to allay any incentive for witnesses to shade the truth or equivocate on tough questions, section 1983 embraces "absolute immunity from subsequent damage liability for all persons—governmental or otherwise—who were integral parts of the judicial process." *Briscoe,* 460 U.S. at 335, 103 S.Ct. at 1115. "[E]very consideration of public policy requires that [witnesses] should be as fearless in testifying as the judge and jury are independent in weighing their testimony." *Williams v. Hepting,* 844 F.2d 138, 141 (3d Cir.1988). The primacy of the truth-finding function is obviously equally valid in all manner of judicial or quasi-judicial proceedings including the medical evaluation and civil commitment hearing at issue here. On this ground alone, the defendants are absolutely immune.

■ Defendants did not act merely as witnesses, however. Dr. Tronetti undertook his evaluation of McArdle at the request of the Court of Common Pleas, and Mr. Reilly instituted the commitment proceedings as a direct result thereof. Although a somewhat adversarial commit-

ment hearing took place, Dr. Tronetti spoke from a position of trust. He was hand picked by the final decision-maker to evaluate McArdle, and thus his testimony was infused with an air of official credibility. It is quite apparent that Judge Connelly issued the commitment order predominately on the strength of Tronetti's recommendation. Accordingly, the two defendants were part of the truth *deciding* apparatus—more like a judge, a prosecutor, a special master or other functionary of the court, than like a routine witness. See, e.g., *Moses v. Parwatikar,* 813 F.2d 891, 893 (8th Cir.1987); *Miner v. Baker,* 638 F.Supp. 239, 241 (E.D.Mo.1986).

In *Gardner by Gardner v. Parson,* 874 F.2d 131 (3d Cir.1989), the Third Circuit held that a guardian ad litem was entitled to absolute immunity, though it was careful to point out its disagreement with the Sixth Circuit, namely that not *all* such guardians are entitled to absolute immunity. *Id.* at 145. Instead the court applied the "functional approach," its only criterion being the extent to which the subject of the claimed immunity acted as an "integral part of the judicial process." *Id.* at 146 (citation omitted).[6] As noted, Dr. Tronetti's diagnosis was more than an integral part of the judicial process; it was well nigh its only substantial component. With so much resting upon Dr. Tronetti's professional judgment it is essential to the endeavor of truth that he remain free to exercise his best professional faculties "unembarrassed by the fear of damage suits." *Barr v. Matteo,* 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959). Otherwise, the law encourages those in Dr. Tronetti's position to subordinate the true to

113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Seventh and Second Circuits have held that even if prison officials present false testimony in prison proceedings, due process is not violated as long as the hearing itself is consistent with procedural requirements. See *Freeman,* 808 F.2d at 949; *Hanrahan,* 747 F.2d at 1137. Indeed, it is almost self-evident that the purpose of having hearings in general is precisely *because* parties will lie; their very purpose is to ferret out the prevarication

from the verity. See *Wilson v. Maben,* 676 F.Supp. 581 (M.D.Pa.1987). While the same could be said here, we decline to address the matter because defendants are immune under *Briscoe.* Cf. infra note 6.

6. To the extent that the defendants did act as part of the decision-making mechanism, the reasoning of *Hanrahan v. Lane* would not apply. See supra note 5.

the safe.[7] Such reasoning is as sound with respect to Reilly's decision to institute proceedings, as it is with respect to Tronetti's investigative, diagnostic and testimonial functions. Accordingly, Reilly and Tronetti should be accorded absolute immunity for any conduct relative to the commitment hearing. See *Gardner,* 874 F.2d at 131; *Kurzawa v. Mueller,* 732 F.2d 1456 (6th Cir.1984); *Babcock v. Tyler,* 884 F.2d 497 (9th Cir.1989); *Myers v. Morris,* 810 F.2d 1437 (8th Cir.1987); *Moses,* 813 F.2d at 891; *Miner,* 638 F.Supp. at 241. Cf. *Snell v. Tunnell,* 920 F.2d 673 (10th Cir.1990); *Stem v. Ahearn,* 908 F.2d 1 (5th Cir.1990).

█ Plaintiff concedes as much, but contends that he is not challenging the testimonial acts. Instead he claims that an illegal *conspiracy* was afoot to violate his due process rights. We agree with all the authority we have located in holding that alleging a conspiracy to falsely testify does not abrogate absolute immunity. *Holloway v. Walker,* 765 F.2d 517, 523 (5th Cir.1985); *Moses,* 813 F.2d at 893; *Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir.1986) (en banc); *Dykes v. Hosemann,* 776 F.2d 942, 946 (11th Cir.1985). Were we to hold otherwise, absolute immunity would mean little. The difference between the conspiracy to perjure and its actual offenses is minuscule if not undetectable, and thus such a rule would entirely defeat the immunity by a mere device of pleading. There is no advantage and little difference between allowing conspiracy to abrogate immunity and repealing the immunity itself. We can find no justification for either. Accordingly, defendants' motions to

dismiss will be granted by the accompanying order.[8]

### III.

█ The investigative and testimonial acts of the defendants cannot be the basis of liability. However, Dr. Tronetti and Mr. Reilly also confronted the plaintiff in their other capacities, to wit, their capacities as prison officials. The Supreme Court has made clear that "deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, ... proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Thus, perhaps the Eighth Amendment rather than the Due Process Clause provides the protection plaintiff seeks. Moreover, in their capacities as prison officials, the defendants are protected only by qualified immunity. See *Hynson v. City of Chester,* 827 F.2d 932, 934 (3d Cir.1987). Viewed critically, the damage done here is alleged to have resulted from grossly negligent and extremely deficient diagnostic procedures and treatment prescriptions. It is conceivable that plaintiff could "produce opinions of medical experts which assert that the official's actions were so grossly contrary to accepted medical practices as to amount to deliberate indifference." *Howell v. Evans,* 922 F.2d 712 (11th Cir.1991).

McArdle has not made any such claim, and by stating that one is "conceivable" we do not express any opinion on its potential merits—not even that it could survive a motion to dismiss. We state merely that if any wrong is actionable here, it is the diag-

---

7. Of course the very responsibility which makes it important for judicial officers to have freedom from the threat of damage suits, contains within it the potential for disastrous abuses of power. Simply stated, immunity implies a judgement that government actors are sufficiently scrupulous that more societal harm would come from deterring enterprising exercise of official duties by abrogating immunity, than by allowing the few (relatively) victims of government debauchery to remain uncompensated.

8. We also note that to the extent McArdle's claim rests on the impropriety of the diagnosis, the primary source of relief was an appeal from

the commitment order. See 50 Pa.S.A. §§ 7401, 7301–7304; e.g., *In re McMullins,* 462 A.2d 718, 315 Pa.Super. 531 (1983). *In re Wilson,* 449 A.2d 711, 303 Pa.Super. 326 (1982). To the extent he would fail with respect to that appeal, the decisions on this issue might have preclusive effect in his § 1983 action in accordance with Pennsylvania law. 28 U.S.C. § 1738; *Wheeler v. Nieves,* 762 F.Supp. 617, 623–27 (D.N.J.1991) (discussing New Jersey preclusion law); *Hepting,* 844 F.2d at 143–44 (if appeal is still pending); *Bradley v. Pittsburgh Bd. of Education,* 913 F.2d 1064, 1073–76 (3d Cir.1990); *Drum v. Nasuti,* 648 F.Supp. 888 (E.D.Pa.1986), *aff'd mem.,* 831 F.2d 286 (3d Cir.1987).

nosis and treatment of the alleged psychiatric problem, and not the *process* by which decisions were reached.

Having found that the complaint as currently written states no federal claim, we decline to exercise our jurisdiction over the remaining pendant state-law causes of action. 28 U.S.C.A. § 1367(c)(3) (1991 Supp.); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Accordingly, plaintiff's entire complaint will be dismissed.