381 F.3d 965
 Paul Douglas GILBERTSON, Plaintiff-Appellant,
v.
Stuart H. ALBRIGHT; Keith R. Battleson; Jack W. Burris; Suzanne T. Crane; Charles L. Crump; Yolanda I. Guran-Postlethwaite; Charles W. Hester; Ron A. Hoffine; Robert V. Neathamer; R. Charles Pearson; Ronald E. Stuntzner; David P. Taylor; Robert A. Walker; Richard H. Zbinden, in their individual capacities, Defendants-Appellees.
 No. 02-35460.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 22, 2004.*
 Filed September 3, 2004.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED James M. Brown, Enfield Brown Knivila Razor & Cook, Salem, OR, for the plaintiff-appellant.
 Richard D. Wasserman, Department of Justice, Civil/Administrative Appeals Unit, Salem, OR, for the defendants-appellees.
 Appeal from the United States District Court for the District of Oregon; Michael R. Hogan, Chief District Judge, Presiding. D.C. No. CV-01-06282-HO.
 Before: SCHROEDER, Chief Judge, PREGERSON, O'SCANNLAIN, RYMER, KLEINFELD, SILVERMAN, GRABER, WARDLAW, FISHER, RAWLINSON, and BYBEE, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 May Younger[1] abstention apply in an action for damages pursuant to 42 U.S.C. § 1983 that relates to a pending state proceeding, and if so, should the action be dismissed or stayed?
 
 
 2
 This is the question that prompted us to go en banc in Gilbertson v. Albright, 350 F.3d 1030 (9th Cir.2003), and American Consumer Publishing Ass'n, Inc. v. Margosian, 349 F.3d 1122 (9th Cir.2003). Both opinions have been vacated, and Margosian has since settled.
 
 
 3
 In Gilbertson, the federal plaintiff, Paul Douglas Gilbertson, was a land surveyor whose Oregon license to survey was revoked and not reinstated by the State Board of Examiners for Engineering and Land Surveying (the Board). Gilbertson appealed both decisions to the Oregon Court of Appeals. Meanwhile, Gilbertson filed this action seeking money damages from members of the Board for violating his First Amendment rights, violating his right to due process, and denying him equal protection of the laws. The district court dismissed the action on the basis of Younger abstention.
 
 
 4
 We conclude that Younger principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings. However, federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed. To this extent we recede from our statements in Green v. City of Tucson, 255 F.3d 1086, 1098, 1102 (9th Cir.2001) (en banc), that direct interference is a threshold requirement, or element, of Younger abstention, and that Younger only precludes, but does not delay, the federal court action.[2]
 
 
 5
 The Middlesex[3] factors, which guide consideration of whether Younger extends to noncriminal proceedings, indicate that Younger principles apply here because the state proceeding was pending at the time Gilbertson filed his federal action, it was in the nature of a judicial proceeding that implicates important state interests, and it afforded Gilbertson an adequate opportunity to raise his constitutional challenges. For this reason, the district court should have deferred to the Oregon proceeding unless that proceeding was conducted in bad faith or some other exception to Younger exists. The district court held that the bad faith exception was inapplicable because the state judicial proceeding was initiated by Gilbertson; however, this exception turns on whether the state prosecuted the disciplinary proceeding in good faith because the appeal process is but an extension of that proceeding.
 
 
 6
 Accordingly, we reverse dismissal of the action for damages. On remand, the court should reconsider whether any Younger exception applies and, if not, should stay its hand until state proceedings are completed.[4]
 
 
 7
 * The problem in this case arises because the Supreme Court has never explicitly approved or disapproved the application of Younger abstention in a damages action,[5] and we have imposed two conditions on Younger abstention that inhibit—if they do not absolutely prohibit—abstaining when damages are at issue. One such condition is a threshold requirement that the federal relief must directly interfere in the state litigation by "seek[ing] to enjoin, declare invalid, or otherwise involve the federal courts in terminating or truncating the state court proceedings," and the other is that when Younger abstention applies, "it does not merely delay, but precludes, the federal court litigation." Green v. City of Tucson, 255 F.3d 1086, 1098, 1102 (9th Cir.2001) (en banc). Upon reflection and in light of the question we must answer here, we are persuaded that both conditions need clarification.
 
 
 8
 * To explain why, we start with the evolution of Younger principles in the Supreme Court.
 
 
 9
 Younger itself involved a state criminal prosecution which the federal plaintiff sought to enjoin on the ground that the state's criminal syndicalism law, under which he was charged, was unconstitutional. The Court held that equitable relief was unwarranted because a proceeding was pending in state court when the federal plaintiff sought to enjoin it, this proceeding afforded the claimant an opportunity to raise his constitutional claims, and there was no showing that the state prosecution was brought in bad faith. In reaching this conclusion the Court observed that Congress over the years has manifested an intent to permit state courts to try state cases free of federal interference. It identified two sources for this policy: the constraints of equity jurisdiction and the concern for comity in our federal system. Courts have long had discretion not to exercise equity jurisdiction when alternatives are available, and narrowly confined ability to do so when the object is a criminal prosecution. In modern times, as Younger explains, equitable principles prevent erosion of the role of the jury and duplication of legal proceedings when a single suit would be adequate to protect the rights asserted.[6] Principles of comity, on the other hand, preserve respect for state functions such that the national government protects federal rights and interests in a way that will not "unduly interfere with the legitimate activities of the States."[7] 401 U.S. at 43-45, 91 S.Ct. 746. Of these two, as the Court continues to make clear, comity is the more "vital consideration." Id. at 44, 91 S.Ct. 746; New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI) (noting that Younger rested "primarily on the `even more vital consideration' of comity"); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 10, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (noting comity as Younger's second and "even more vital" explanation for its decision); Juidice v. Vail, 430 U.S. 327, 334, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (emphasizing that comity is the "more vital consideration").
 
 
 10
 The Court was soon called upon to decide whether Younger extends to a federal plaintiff's request for declaratory relief. The federal plaintiffs in Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), sought a declaration that the state statute under which they were being prosecuted was unconstitutional. The Court held that Younger applies to requests for declaratory relief because "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." Id. at 72, 91 S.Ct. 764. The Court stated that this is so for two independent reasons: a declaration could be the basis for an injunction, and even if it were not used for this purpose, "the declaratory relief alone has virtually the same practical impact as a formal injunction would." Id. As the Court explained by quoting Public Service Commission v. Wycoff Co., 344 U.S. 237, 247, 73 S.Ct. 236, 97 L.Ed. 291 (1952):
 
 
 11
 Is the declaration contemplated here to be res judicata, so that the [state court] can not hear evidence and decide any matter for itself? If so, the federal court has virtually lifted the case out of the State [court] before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights.
 
 
 12
 Id. (alterations in original) (internal quotation marks omitted). Thus, the Court recognized that preclusion rules give a declaration of rights the same real effect on a pending state proceeding as an injunction.
 
 
 13
 Next, the Court held that Younger principles are applicable to a state civil proceeding based on a nuisance statute that the federal plaintiff sought to challenge on federal constitutional grounds. Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In so doing, the Court emphasized that considerations of federalism counsel restraint "since interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted `as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" Id. at 604, 95 S.Ct. 1200 (quoting Steffel v. Thompson, 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).
 
 
 14
 In Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the federal plaintiff sought in an action brought under § 1983 to enjoin use of statutory contempt procedures authorized by state law that he alleged were used by a state court in violation of his due process rights. Holding that the district court could not entertain such an action given Younger and Huffman, the Court distilled the comity principles that animate abstention—that the state's interest in administration of its judicial system is important, that federal court interference would be an offense to the state's interest, and that such interference would both unduly interfere with the legitimate activities of the state and readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles. Id. at 336, 97 S.Ct. 1211 (citing Huffman, 420 U.S. at 604, 95 S.Ct. 1200; Younger, 401 U.S. at 44, 91 S.Ct. 746); see also Trainor v. Hernandez, 431 U.S. 434, 445, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (identifying duplicative litigation and lack of state-court interpretation of statutory framework as central concerns underlying Younger). The Court also noted that Younger requires no more than an opportunity for the presentation of federal constitutional claims in the state proceeding; the federal plaintiff's failure to avail himself of that opportunity does not mean that the state procedures are inadequate. Juidice, 430 U.S. at 337, 97 S.Ct. 1211; see also Moore v. Sims, 442 U.S. 415, 430-32, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (reiterating the Huffman precept that state courts are competent to adjudicate federal constitutional claims and that the only relevant question for purposes of Younger is whether the state proceedings afford an adequate opportunity to raise the constitutional challenge).
 
 
 15
 Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), held that a federal court should not entertain a § 1983 suit for damages based on the enforcement of a state tax scheme. The federal plaintiffs argued that their § 1983 claim would not chill the state's administration of its tax scheme given the fact that they sought recovery from individual officers rather than the state. The Court disagreed, reasoning that petitioners could not recover damages unless a district court first determined that the tax system violates their constitutional rights, which would, in effect, be the same thing as a declaratory judgment. In the Court's view, "such a determination would be fully as intrusive as the equitable actions that are barred by principles of comity." Id. at 113, 102 S.Ct. 177.[8] Also, as the Court noted, the federal plaintiffs would be able to invoke their federal judgments without the state having had the chance to rectify any constitutional deficiency.
 
 
 16
 Younger principles were then applied in Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), to consideration of a constitutional challenge to state bar disciplinary rules that were the subject of a pending disciplinary proceeding within the jurisdiction of a state supreme court. The Court observed that Younger and its progeny
 
 
 17
 espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying Younger abstention have been frequently reiterated by this Court. The notion of "comity" includes a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.
 
 
 18
 Id. at 431, 102 S.Ct. 2515 (internal quotation marks and citation omitted). The Court reiterated from Moore and Huffman that Younger policies are applicable to noncriminal judicial proceedings when important state interests are involved; from Trainor and Juidice that the importance of the state interest may be manifest by the fact that noncriminal proceedings bear a close relationship to proceedings that are criminal in nature, or where the proceedings are necessary for the vindication of important state policies or for the functioning of the state judicial system; and from Moore that where vital state interests are involved, the pertinent inquiry is whether the state proceeding affords an adequate opportunity to raise constitutional claims. Id. at 432, 99 S.Ct. 2371. Thus, as the Court framed the question, it is: first, do the type of state hearings at issue constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges. Id.
 
 
 19
 In Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Court held that Younger required the district court to abstain from hearing a request to enjoin execution of a state court judgment and application of the state's appeal bond and judgment lien provisions as unconstitutional. The Court pointed out that in addition to the limits of equity and the concern for comity, another reason to abstain is to avoid unwarranted determination of federal constitutional questions—especially when the federal plaintiff chooses not to present them in state court. As it noted, "Younger abstention in situations like this `offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.'" Id. at 12, 107 S.Ct. 1519 (quoting Moore, 442 U.S. at 429-30, 99 S.Ct. 2371). The Court rejected Texaco's argument that the district court action would not affect an important state interest, recognizing instead that states have an important interest in enforcing orders and judgments of their judicial systems. So long as challenges to the process by which state judgments are obtained relate to pending state proceedings, "proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." Id. at 14, 99 S.Ct. 2371.
 
 
 20
 The federal plaintiffs in Deakins v. Monaghan, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), sought injunctive relief and damages under § 1983 for seizure of documents in violation of their constitutional rights. The district court dismissed the claims for monetary relief pursuant to Younger; the court of appeals held that even when abstaining entirely from the equitable claims, the district court was required to stay federal claims that were not cognizable in the state forum in which the claims were being adjudicated. The Supreme Court did not decide the extent to which Younger applies to a federal action seeking only damages because it held that a district court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding. Id. at 202, 108 S.Ct. 523. In so holding the Court embraced the Third Circuit's rule that a district court must stay rather than dismiss claims that are not cognizable in the parallel state proceeding. "It allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists." Id. at 202-03, 108 S.Ct. 523 (internal quotation marks omitted). Justice White, joined by Justice O'Connor, would have reached the issue of whether Younger applies to claims for damages and resolved it in favor of applying Younger. They reasoned that, as with the declaratory judgment action in Samuels aimed at adjudicating a federal issue involved in a state criminal proceeding, the practical effect of damages relief and injunctive relief will be virtually identical and the policy against federal interference with the state proceeding will be frustrated as much by a damages award as it would be by an injunction. Accordingly, they would have held that the district court must not proceed to judgment on the damages claims but that those claims may not be adjudicated until the conclusion of the pending state proceedings. Id. at 209-10, 108 S.Ct. 523 (White, J., concurring).
 
 
 21
 In New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI), the Court considered whether a state court proceeding reviewing a ratemaking authority's order was the type of proceeding to which Younger applies.[9] Making clear that the mere existence of parallel proceedings is not sufficient but that the class of case matters, the Court indicated that Younger does not apply to a state judicial proceeding that is reviewing legislative or executive action or to a proceeding that is legislative, not judicial, in nature.
 
 
 22
 Finally, although it involved Burford rather than Younger abstention, Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), is relevant because it was a damages action and discusses abstention principles in general. The California Insurance Commissioner as trustee of the assets of a failed insurer sought to recover damages from Allstate for breach of reinsurance agreements in state court. After Allstate removed the action, the Commissioner sought remand on the basis of Burford abstention. The district court agreed and remanded the action. Our court reversed on the ground that Burford abstention could only be exercised in cases in which equitable relief is sought. The Supreme Court upheld reversal of the order, but on the different ground that courts have power to dismiss or remand based on abstention principles only when the relief sought is equitable or discretionary. For this reason the Court did not decide whether a more limited abstention-based stay order would have been warranted. However, the opinion observes that abstention principles have been applied to actions at law only to permit federal courts to stay adjudication, not to dismiss the federal suit altogether. Id. at 719-20, 116 S.Ct. 1712 (citing Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28-30, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (approving a stay order); Fornaris v. Ridge Tool Co., 400 U.S. 41, 44, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970) (per curiam) (directing district court to stay its hand); United Gas Pipe Line Co. v. Ideal Cement Co., 369 U.S. 134, 135-36, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962) (per curiam) (deferring decision of federal question); Clay v. Sun Ins. Office Ltd., 363 U.S. 207, 212, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960) (approving postponement of decision in damages suit)). As the Court explained:
 
 
 23
 Unlike the outright dismissal or remand of a federal suit, we held [in Thibodaux], an order merely staying the action does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition. We have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court. By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.
 
 
 24
 Quackenbush, 517 U.S. at 721, 116 S.Ct. 1712 (internal quotation marks and citation omitted).
 
 
 25
 In sum, Supreme Court precedent tells us that comity is the main reason for federal court restraint in the face of ongoing state judicial proceedings, and another is to avoid unwarranted determinations of federal constitutional law. For these reasons, federal courts should almost never enjoin state criminal proceedings; federal courts should also refrain from exercising jurisdiction in actions for declaratory relief because declaratory relief has the same practical impact as injunctive relief on a pending state proceeding as a result of the preclusive effect of the federal court judgment; and federal courts should be governed by the same principles when the state proceeding is civil but in such cases, the proceeding must be pending when the federal action is filed, it must be in the nature of a judicial proceeding that implicates important state interests (akin to those involved in criminal prosecutions), and it must afford the federal plaintiff an adequate opportunity to present his federal constitutional challenges. Finally, an abstention-based stay order, rather than a dismissal, is appropriate when damages are at issue.
 
 B
 
 26
 Green v. City of Tucson, 255 F.3d 1086 (9th Cir.2001) (en banc), involved parallel state and federal proceedings in which the same constitutional challenge to a state statute was raised. None of the federal plaintiffs was a party to the state court proceedings. The district court applied the three-part Middlesex test for Younger abstention[10] and held that the test was satisfied because there was a pending proceeding that implicated important state interests, and the federal plaintiffs could have intervened in that action. It dismissed the federal action, and we reversed. We held that the Younger doctrine applies only when an additional element beyond the Middlesex factors is present—direct interference in the state court litigation—and alternatively, that Younger does not apply to nonparties just because they could have intervened.
 
 
 27
 It is the holding that "direct interference" is an additional element or threshold requirement for Younger abstention that troubles us now. We indicated in Green that the three-factor Middlesex test was triggered only because the plaintiffs there were seeking to interfere directly with the pending disciplinary proceedings by asking the federal court to enjoin them, and that the Middlesex test is a suitable guide only when the relief sought in federal court would "directly interfere" with ongoing state judicial proceedings. We found confirmation of this view in the emphasis that NOPSI placed on the fact that the mere pendency of state proceedings does not exclude the federal courts. 255 F.3d at 1097 (quoting NOPSI, 491 U.S. at 373, 109 S.Ct. 2506). And we defined an action that would directly interfere as one seeking "to enjoin, declare invalid, or otherwise involve the federal courts in terminating or truncating the state court proceedings." Id. at 1098. We also spoke in terms of relief that "stops that proceeding cold," id. at 1095, and remarked that the "direct interference" element is not met simply by the prospect that the federal court decision may influence the state court outcome through claim or issue preclusion. Id. at 1094. In these respects, we believe, our course must be corrected.
 
 
 28
 There is no doubt that interference with state proceedings is at the core of the comity concern that animates Younger. It is an oft-repeated policy. See, e.g., Middlesex, 457 U.S. at 431, 102 S.Ct. 2515 (noting the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances"); NOPSI, 491 U.S. at 372, 109 S.Ct. 2506 (stating that a challenge to completed legislative action is not "the interference with ongoing judicial proceedings against which Younger was directed"). In this sense, interference is undoubtedly the reason for Younger restraint, or the end result to be avoided. However, the Supreme Court has never required that interference be "direct" in the manner we described in Green.
 
 
 29
 It did not do so in Middlesex. Rather, by posing the three-part inquiry that we refer to as "the Middlesex test," the Court was consolidating its jurisprudence on when Younger applies to state proceedings that are noncriminal in nature.[11]
 
 
 30
 Nor does NOPSI change the analysis because it also was concerned with the type of proceeding that can show a state interest of such importance as to warrant protection from federal interference—not with the type of interference that Younger proscribes. As the Court noted by reference to Middlesex and Dayton Christian Schools, judicial proceedings or disciplinary proceedings which are judicial in nature are the type of proceeding that does implicate an important state interest. NOPSI, 491 U.S. at 370, 109 S.Ct. 2506 (citing Middlesex, 457 U.S. at 433-34, 102 S.Ct. 2515 (stating that bar disciplinary proceedings are judicial in nature and as such, are of a character to warrant federal court deference), and Dayton Christian Schools, 477 U.S. at 627, 106 S.Ct. 2718 (noting that the administrative proceedings in Middlesex were judicial in nature from the outset)). However, a state proceeding which is nonjudicial or involves the interpretation of completed legislative or executive action is not of that character. Thus, NOPSI clarifies the type of proceeding that can satisfy the second Middlesex factor rather than the type of interference that qualifies for Younger abstention.
 
 
 31
 The most illuminating insight into the Court's perspective on interference comes from Younger and Samuels. The type of interference in Younger was, of course, the most offensive and intrusive action that a federal court can take with respect to a state proceeding—to enjoin it altogether. However, the Court extended Younger beyond injunctions to declaratory judgments because a declaration has the same practical effect on a state court proceeding as an injunction. Samuels, 401 U.S. at 72, 91 S.Ct. 764. This was also the rationale of Fair Assessment that Quackenbush preserved. Quackenbush, 517 U.S. at 719, 116 S.Ct. 1712. Younger could not extend to declaratory relief were "direct interference" required, nor could Younger apply to declarations if preclusion rules were not in play.
 
 
 32
 Accordingly, we are convinced that Younger abstention involves only such interference as the Supreme Court described in Samuels—that which would have the same practical effect on the state proceeding as a formal injunction. Preclusion rules may be relevant to determining the practical effect of a federal court's relief. The Middlesex test answers the question of whether Younger applies to noncriminal proceedings.[12] If a state-initiated proceeding is ongoing, and if it implicates important state interests (as refined by NOPSI), and if the federal litigant is not barred from litigating federal constitutional issues in that proceeding, then a federal court action that would enjoin the proceeding, or have the practical effect of doing so, would interfere in a way that Younger disapproves. Therefore, we shall no longer require "direct interference" as a condition, or threshold element, of Younger abstention.
 
 C
 
 33
 Having clarified that "direct interference" is not required as a precondition for Younger abstention, we now consider whether Younger extends to actions for damages under § 1983.
 
 
 34
 Apart from Fair Assessment, whose significance for the abstention doctrines was subsequently limited, the Supreme Court has not decided whether Younger applies to actions for damages. By the same token, the Court has "not held that abstention principles are completely inapplicable in damages actions." Quackenbush, 517 U.S. at 730, 116 S.Ct. 1712.
 
 
 35
 Justices White and O'Connor would have reached the issue of whether Younger applies to damages actions in Deakins, and resolved it in favor of holding that federal courts must stay, rather than proceed to adjudicate, federal constitutional claims. They noted that a plurality of circuits apply the Younger doctrine "in some fashion" to damages claims. 484 U.S. at 208 & n. 3, 108 S.Ct. 523 (White, J., concurring) (collecting cases).[13] This is for good reason, in their view, because a disposition on the merits of the claims by the federal court would be owed preclusive effect in the state proceeding, as the Court recognized when extending Younger to declaratory judgments in Samuels. The concurring justices also pointed out that it makes no sense for a federal court to be unable to declare that an aspect of a state proceeding is unconstitutional, but to be able to rule the same thing so long as the federal plaintiff seeks damages in addition to a declaration.
 
 
 36
 We were one of the circuits to which the Deakins concurrence referred. In Mann v. Jett, 781 F.2d 1448 (9th Cir.1986) (per curiam), the federal plaintiff sought declaratory relief and money damages under § 1983 for denial of his Sixth Amendment right to counsel in a pending criminal prosecution. We concluded that in these circumstances, "`the potential for federal-state friction is obvious.'" Id. at 1449 (quoting Guerro v. Mulhearn, 498 F.2d 1249, 1253 (1st Cir.1974)) (altered text omitted). Since then we have indicated that Younger's application to a § 1983 suit for damages is unclear, Hirsh v. Justices of Supreme Court of Cal., 67 F.3d 708, 715 n. 5 (9th Cir.1995) (per curiam); that the Supreme Court has not yet decided whether Younger applies to claims for damages and in any event, abstention is not appropriate when the constitutional basis for a damages claim under § 1983 is "wholly unrelated" to the constitutional basis comprising a defense to the pending state proceeding, Lebbos v. Judges of the Superior Court, 883 F.2d 810, 816-17 (9th Cir.1989); that this court's signals are mixed and Supreme Court precedent is ambiguous although applying Younger to damages actions seems disfavored, Martinez v. Newport Beach City, 125 F.3d 777, 783 (9th Cir.1997), overruled on other grounds by Green, 255 F.3d at 1093; and that a district court may stay but not dismiss an action for damages based on Younger abstention, Adam v. Hawaii, 235 F.3d 1160, 1163 (9th Cir.2000), overruled on other grounds by Green, 255 F.3d at 1093.
 
 
 37
 As we are sitting en banc, we approach the question afresh and resolve whatever mixed signals we may have sent. United States v. Cabaccang, 332 F.3d 622, 634 (9th Cir.2003) (en banc). We conclude that Younger principles may apply to claims for damages under § 1983. Damages suits that turn on a constitutional challenge to pending state proceedings implicate the reasons for Younger abstention as much as equitable or declarative relief actions because to determine whether the federal plaintiff is entitled to damages—and to determine whether the federal defendant is entitled to immunity—the district court must first decide whether a constitutional violation has occurred. See Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (holding that the first step in qualified immunity analysis is to determine whether the conduct complained of violates the Constitution). This determination would have the same practical impact as the declaration in Samuels. It would frustrate the state's interest in administering its judicial system, cast a negative light on the state court's ability to enforce constitutional principles, and put the federal court in the position of prematurely or unnecessarily deciding a question of federal constitutional law. Therefore, a determination that the federal plaintiff's constitutional rights were violated would be just as intrusive as a declaratory judgment.[14]
 
 
 38
 Despite these practical similarities, damages actions are different from actions that seek only declaratory or injunctive relief in two important respects: The relief is not discretionary, and it may not be available in the state proceeding. For example in this case, while Gilbertson could raise his constitutional challenges in the state proceeding, he could not seek compensation for whatever deprivation may have occurred. But there is no reason why federal interference with the state proceeding cannot be avoided, thus preserving the interests of comity, yet damages also be available in the federal court, thus protecting the federal plaintiff's right to seek them. This can be accomplished by entry of an order staying the federal action until the state proceeding has been completed. See Deakins, 484 U.S. at 202-03, 108 S.Ct. 523 (commending the Third Circuit's rule that requires a district court to stay rather than dismiss claims that are not cognizable in the parallel state proceeding as sound because "[i]t allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists" (internal quotation marks omitted)).[15]
 
 
 39
 When the Supreme Court has applied abstention principles to actions at law, it has only allowed stay orders, not orders dismissing the action entirely. See Quackenbush, 517 U.S. at 719-20, 116 S.Ct. 1712 (collecting cases). We believe it is prudent to adhere to this approach. When an injunction is sought and Younger applies, it makes sense to abstain, that is, to refrain from exercising jurisdiction, permanently by dismissing the federal action because the federal court is only being asked to stop the state proceeding. Once it is determined that an injunction is not warranted on Younger grounds, there is nothing more for the federal court to do. Hence, dismissal (and only dismissal) is appropriate. But when damages are sought and Younger principles apply, it makes sense for the federal court to refrain from exercising jurisdiction temporarily by staying its hand until such time as the state proceeding is no longer pending. This allows the federal plaintiff an opportunity to pursue constitutional challenges in the state proceeding (assuming, of course, that such an opportunity is available under state law), and the state an opportunity to pass on those constitutional issues in the context of its own procedures, while still preserving the federal plaintiff's opportunity to pursue compensation in the forum of his choice. In this way, neither the federal plaintiff's right to seek damages for constitutional violations nor the state's interest in its own system is frustrated.[16]
 
 
 40
 This said, we recognize that courts have frequently associated Younger abstention with dismissals, not stays. This is not true of other abstention doctrines, and we see no reason why a court should not defer, rather than dismiss, a case where Younger principles apply but the relief sought is not discretionary. Fortunately, the right pigeonhole is not crucial. See NOPSI, 491 U.S. at 359, 109 S.Ct. 2506 ("[T]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases ....") (quoting Pennzoil, 481 U.S. at 11 n. 9, 107 S.Ct. 1519). The important thing is to strike the right balance between the federal courts' obligation to exercise the jurisdiction conferred upon them, Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976),[17] and to "soften the tensions inherent in a system that contemplates parallel judicial processes," Pennzoil, 481 U.S. at 11 n. 9, 107 S.Ct. 1519. We are confident that Younger principles apply to a claim for damages based on constitutional challenges which can be asserted in pending state proceedings that implicate important state interests, and that the correct disposition is to defer—not to dismiss—when damages are at issue. To stay, rather than dismiss, "does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition." Quackenbush, 517 U.S. at 721, 116 S.Ct. 1712 (quoting Thibodaux, 360 U.S. at 29, 79 S.Ct. 1070). Consequently, to the extent we have previously indicated in Green and elsewhere that Younger abstention precludes, but does not delay, federal litigation, we clarify that this is so when discretionary relief is at issue, but not when damages are. When damages are at issue, and comity dictates, courts should defer.[18]
 
 II
 
 41
 We conclude that, in this case, Younger principles are implicated and the Middlesex factors are satisfied.[19]
 
 
 42
 Younger principles apply to this claim for damages because the constitutional issues raised in Gilbertson's federal complaint—that the Board retaliated against him for the exercise of his First Amendment rights as a critic of the Board's policies regarding the authority granted to county surveyors; that its hearings violated his due process rights; and that the Board denied him equal protection of the laws—go to the heart of his opposition to the Board's action in the state proceeding, such that a federal court's decision on the merits of Gilbertson's claims would have the same practical effect on the state proceeding as an injunction. See Saucier, 533 U.S. at 200, 121 S.Ct. 2151 (holding that courts ruling on a qualified immunity issue must first determine whether a constitutional violation has occurred).
 
 
 43
 Applying the Middlesex factors, there is no dispute that the state disciplinary proceeding was ongoing when Gilbert-son son filed his federal action and that it is a proceeding of a judicial nature that implicates an important state interest. The Board's process here is akin to the bar disciplinary process in Middlesex. A pending appeal in the Oregon Court of Appeals is an ongoing state judicial proceeding. See Huffman, 420 U.S. at 608-09, 95 S.Ct. 1200. Oregon has a strong interest in enforcing its licensing requirements. Thus, the dispositive question is whether Gilbertson's constitutional claims can be litigated in the state proceedings.
 
 
 44
 Gilbertson raised a due process challenge and agrees that he was able to raise his First Amendment and Equal Protection claims before the Oregon Court of Appeals, but argues that his entitlement to do so was meaningless because the conduct about which he complained was outside of the administrative record. This argument fails in light of the appellate court's authority to appoint a special master "to take evidence and make findings of fact" in cases that involve "disputed allegations of irregularities in procedure before the agency not shown in the record which, if proved, would warrant reversal or remand." Or.Rev.Stat. § 183.482(7). As a result, a full factual record could have been developed.
 
 
 45
 Although Gilbertson could have presented all of his constitutional claims in the state proceeding, he chose not to do so. However, failure to avail himself of the opportunity does not mean that the state procedures are inadequate. Juidice, 430 U.S. at 337, 97 S.Ct. 1211. They clearly are adequate for the purpose of raising constitutional issues, but not for the purpose of seeking monetary relief because it could not be awarded in the ongoing proceeding. Nevertheless, that obstacle is obviated by the federal court's staying, rather than dismissing, the federal action. In sum, Gilbertson has failed to show that he was barred from pursuing constitutional challenges in the state proceeding. See Pennzoil, 481 U.S. at 14-15, 107 S.Ct. 1519 (noting that the federal plaintiff bears the burden of showing that state procedural law bars presentation of constitutional claims) (citing Moore, 442 U.S. at 432, 99 S.Ct. 2371; Younger, 401 U.S. at 45, 91 S.Ct. 746).
 
 
 46
 We conclude that Younger principles apply if no exception applies.
 
 III
 
 47
 Gilbertson contends that Younger does not apply because he was singled out for disparate treatment on account of complaining about Board policies, his license was revoked despite his achievement on the licensing examination, the Board changed its rules to exclude him, and a Board member was biased. Even though Younger is implicated, Huffman held that a federal court is not obliged to refrain from intervention "where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 420 U.S. at 611, 95 S.Ct. 1200 (internal quotation marks omitted). Here, the district court found that the state proceeding in the Oregon Court of Appeals was initiated by Gilbertson. However, the pertinent proceeding is the one initiated by the Board; the process of judicial review simply exhausts that proceeding. Id. at 608-09, 95 S.Ct. 1200. As the district court never considered whether the Board initiated or conducted the proceeding to revoke or not to reinstate Gilbertson's license in good faith, we must remand so that it may consider whether to proceed with the action pursuant to an exception to Younger or postpone it.
 
 
 Conclusion
 
 
 48
 Younger principles apply in an action for damages pursuant to 42 U.S.C. § 1983 in which the federal plaintiff brings a constitutional challenge to a state proceeding when that proceeding is ongoing; the state proceeding is of a judicial nature, implicating important state interests; and the federal plaintiff is not barred from litigating his federal constitutional issues in that proceeding. This is because a federal court would necessarily have to determine whether the federal plaintiff's constitutional rights were violated, and any such determination would have the same practical effect on the state proceedings as the injunctive relief condemned in Younger and the declaratory relief constrained in Samuels.
 
 
 49
 To rule on the constitutional issue in these circumstances would implicate the state's interest in administration of its judicial system, risk offense because it unfavorably reflects on the state courts' ability to enforce constitutional principles, and put the federal court in the position of making a premature ruling on a matter of constitutional law. Thus, the interests of comity counsel restraint.
 
 
 50
 However, when damages are at issue rather than discretionary relief, deference—rather than dismissal—is the proper restraint. To stay instead of to dismiss the federal action preserves the state's interests in its own procedures, the federal plaintiff's opportunity to seek compensation in the forum of his choice, and an appropriate balance of federal-state jurisdiction.
 
 
 51
 The parties shall bear their own costs on appeal.
 
 
 52
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 Notes:
 
 
 *
 This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2)
 
 
 [1]
 Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 
 [2]
 We do not, however, retreat fromGreen's more general observation that "although there are limited circumstances in which ... abstention by federal courts is appropriate, those circumstances are `carefully defined' and `remain the exception, not the rule.'" 255 F.3d at 1089 (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI), 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (internal quotation marks in NOPSI omitted)).
 
 
 [3]
 Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).
 
 
 [4]
 The critical date for purposes of deciding whether abstention principles apply is the date the federal action is filedSee, e.g., Kitchens v. Bowen, 825 F.2d 1337, 1341 (9th Cir.1987) (noting that the question is not whether the state proceedings are still ongoing, but whether they were underway before initiation of the federal proceedings). Here, that was September 14, 2001. Gilbertson appealed to the Oregon Court of Appeals on January 7, 2000; that court's decision was rendered July 24, 2002 and the state supreme court denied review on October 22, 2002. The appeal is not moot because Gilbertson's federal action was filed while state proceedings were pending. Except to note that proceedings are deemed on-going for purposes of Younger abstention until state appellate review is completed, see Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), we express no opinion on whether a stay, even if otherwise indicated, remains necessary.
 
 
 [5]
 See, e.g., Deakins v. Monaghan, 484 U.S. 193, 202 & n. 6, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (declining to reach the issue); Tower v. Glover, 467 U.S. 914, 923, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) (same); Juidice v. Vail, 430 U.S. 327, 339 n. 16, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (same); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (noting that the Court has never held that abstention principles are completely inapplicable in damages actions). But see Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (holding that a federal court should not entertain a § 1983 suit for damages based on the enforcement of a state tax scheme); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (approving stay in eminent domain proceeding, classified as a suit at common law). Fair Assessment was subsequently construed as a case about the scope of a § 1983 action rather than abstention, see Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 589-90, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), and to the extent it did apply abstention principles, as limited because the damages action there turned first on a declaration that the application of a state tax law was unconstitutional. See Quackenbush, 517 U.S. at 719, 116 S.Ct. 1712.
 
 
 [6]
 The related doctrine ofPullman abstention likewise grew out of the "regard for public consequences in employing the extraordinary remedy of the injunction" that courts of equity traditionally displayed. Railroad Comm'n v. Pullman Co., 312 U.S. 496, 500-01, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In Pullman, the Court recognized that similar restraint would avoid friction in our federal system that would otherwise arise out of "premature constitutional adjudication" and interpreting state law without the benefit of an authoritative construction by state courts. Accordingly, the Court held that federal courts must stay federal actions pending a determination by state courts of state-law issues that are central to a federal constitutional issue. Unlike Younger abstention, Pullman abstention applies whether or not a state proceeding is pending in which the federal constitutional claim may be raised.
 
 
 [7]
 The Court elaborated as follows:
 Th[e] underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... [T]he concept [represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.
 Younger, 401 U.S. at 44-45, 91 S.Ct. 746.
 
 
 [8]
 The Court later limited its holding inFair Assessment to the extent it applies abstention principles. Quackenbush, 517 U.S. at 719, 116 S.Ct. 1712. As Quackenbush remarks of Fair Assessment:
 The damages action in that case was based on the unconstitutional application of a state tax law, and the award of damages turned first on a declaration that the state tax was in fact unconstitutional. We therefore drew an analogy to Huffman and other cases in which we had approved the application of abstention principles in declaratory judgment actions, and held that the federal court should decline to hear the action because "[t]he recovery of damages under the Civil Rights Act first requires a `declaration' or determination of the unconstitutionality of a state tax scheme that would halt its operation."
 Id. (quoting Fair Assessment, 454 U.S. at 115, 102 S.Ct. 177) (alteration in original).
 
 
 [9]
 The Court also considered whetherBurford abstention was applicable. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Burford abstention differs from Younger and Pullman in that Burford protects complex state administrative processes from undue federal interference. It applies when timely and adequate state-court review of the proceedings or orders of state administrative agencies is available, and requires abstention "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." NOPSI, 491 U.S. at 361, 109 S.Ct. 2506 (describing the Burford doctrine) (internal quotation marks omitted).
 
 
 [10]
 Applying theMiddlesex factors accorded with our long-standing law. See, e.g., Hirsh v. Justices of the Supreme Court of the State of Cal., 67 F.3d 708, 712 (9th Cir.1995) (per curiam) ("Absent `extraordinary circumstances', abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims."); Kenneally v. Lungren, 967 F.2d 329, 331 (9th Cir.1992) (holding that the three-part Middlesex test requires federal courts to examine "`(1) [t]he nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings'") (quoting Partington v. Gedan, 880 F.2d 116, 121 (9th Cir.1989), vacated in part on other grounds, 923 F.2d 686, 688 (9th Cir.1991) (en banc) (per curiam)).
 
 
 [11]
 As the Court explained just before setting out the three-part question to be answered:
 The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved. Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); Huffman v. Pursue, Ltd., 420 U.S. 592, 604-05, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in Huffman, supra. Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." Moore, 442 U.S. at 426, 99 S.Ct. 2371. "[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...." Id. at 430, 99 S.Ct. 2371.
 Middlesex, 457 U.S. at 432, 102 S.Ct. 2515 (full internal citations omitted) (alteration in original).
 
 
 [12]
 Other circuits follow theMiddlesex approach as well. See, e.g., Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 638 (1st Cir.1996); Hansel v. Town Court for Springfield, 56 F.3d 391, 393 (2d Cir.1995); Schall v. Joyce, 885 F.2d 101, 106 (3d Cir.1989); Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 251 (4th Cir.1993); Wightman v. Texas Supreme Court, 84 F.3d 188, 189 (5th Cir.1996); Fieger v. Thomas, 74 F.3d 740, 743-44 (6th Cir.1996); Green v. Benden, 281 F.3d 661, 666 (7th Cir.2002); Yamaha Motor Corp., U.S.A. v. Stroud, 179 F.3d 598, 602 (8th Cir.1999); Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir.1997); 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir.2003); Bridges v. Kelly, 84 F.3d 470, 476 (D.C.Cir.1996).
 
 
 [13]
 Most circuits continue to recognize thatYounger principles apply "in some fashion" to damages actions. See, e.g., Kyricopoulos v. Town of Orleans, 967 F.2d 14, 15 n. 1 (1st Cir.1992) (per curiam) (dicta) ("As for § 1983 damages actions, it is appropriate to stay the federal action pending the conclusion of the state criminal proceedings."); Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir.2000) ("[W]e have held that abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate."); Traverso v. Penn, 874 F.2d 209, 213 (4th Cir.1989) ("That the § 1983 claim at issue seeks not only injunctive and declarative relief but money damages as well does not preclude abstention as to the whole action. Under our decisions, the appropriate course is to abstain by staying proceedings on monetary as well as injunctive and declaratory claims."); Carroll v. City of Mount Clemens, 139 F.3d 1072, 1076 (6th Cir.1998) ("We therefore affirm the District Court's application of Younger abstention to Carroll's case but remand the case for the District Court to stay rather than dismiss her lawsuit until the conclusion of the state proceedings."); Yamaha Motor Corp., U.S.A. v. Stroud, 179 F.3d 598, 603-04 (8th Cir.1999) (holding that a stay rather than a dismissal is appropriate when "monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages"); Pompey v. Broward County, 95 F.3d 1543, 1552 n. 12 (11th Cir.1996) ("It is doubtful that federal district courts may dismiss claims for damages under abstention principles."); Doby v. Strength, 758 F.2d 1405, 1406 (11th Cir.1985) (per curiam) (reversing dismissal of § 1983 action, but ordering district court to abstain on deciding the merits until the pending state court proceeding concludes). The Fifth Circuit has held both that Younger does not apply at all to damages actions, Alexander v. Ieyoub, 62 F.3d 709, 713 (5th Cir.1995) ("We have previously observed that the Younger abstention doctrine does not apply to a suit seeking only damages."); Bishop v. State Bar of Texas, 736 F.2d 292, 295 (5th Cir.1984) ("The district court also erred in dismissing Bishop's claim for damages, a species of relief wholly unaffected by Younger."), and also that Younger does apply, however a stay is warranted when the relief requested is not available in the state court proceeding, Lewis v. Beddingfield, 20 F.3d 123, 125 (5th Cir.1994) (per curiam).
 
 
 [14]
 Conversely, neither form of relief would warrant abstention if, as we held inLebbos, the underlying federal claims were "wholly unrelated" to the issues in the pending state proceeding; neither would have the same practical effect as an injunction.
 
 
 [15]
 Most circuits favor staying a damages claim whenYounger principles apply. Several circuits have adopted rules that appear to require a stay, regardless of whether the specific relief is available in state court. Kyricopoulos v. Town of Orleans, 967 F.2d 14, 15 n. 1 (1st Cir.1992) (per curiam) (dicta) ("As for § 1983 damages actions, it is appropriate to stay the federal action pending the conclusion of the state criminal proceedings."); Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir.2000) ("[W]e have held that abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate."); Traverso v. Penn, 874 F.2d 209, 213 (4th Cir.1989) ("That the § 1983 claim at issue seeks not only injunctive and declarative relief but money damages as well does not preclude abstention as to the whole action. Under our decisions, the appropriate course is to abstain by staying proceedings on monetary as well as injunctive and declaratory actions."); Carroll v. City of Mount Clemens, 139 F.3d 1072, 1075-76 (6th Cir.1998) ("We therefore affirm the District Court's application of Younger abstention to Carroll's case but remand the case for the District Court to stay rather than dismiss her lawsuit until the conclusion of the state proceedings."); Yamaha Motor Corp., U.S.A. v. Stroud, 179 F.3d 598, 603-04 (8th Cir.1999) (holding that a stay rather than a dismissal is appropriate when "monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages"); Pompey v. Broward County, 95 F.3d 1543, 1552 n. 12 (11th Cir.1996) ("It is doubtful that federal district courts may dismiss claims for damages under abstention principles."); Doby v. Strength, 758 F.2d 1405, 1406 (11th Cir.1985) (per curiam) (reversing dismissal of § 1983 action, but ordering district court to abstain on deciding the merits until the pending state court proceeding concludes). Some circuits make the decision to stay or dismiss contingent on considerations such as whether or not the relief is available in state court or the federal plaintiff's ability to litigate the claims after the conclusion of the state court proceedings. Williams v. Hepting, 844 F.2d 138, 144-45 (3d Cir.1988) (requiring a stay only for those damages claims that are not available in state court); Bridges v. Kelly, 84 F.3d 470, 471, 477 (D.C.Cir.1996) (holding "that the inability of the D.C. system to afford appellant the full relief he seeks in connection with his federal claims is sufficient to preclude dismissal under Younger").
 The Seventh Circuit has held that a stay is appropriate when the specific relief is not available in the state court proceeding, Simpson v. Rowan, 73 F.3d 134, 137-39 & nn. 5-6 (7th Cir.1995), but also that dismissal under Younger can be appropriate for damages claims, Green v. Benden, 281 F.3d 661, 667 (7th Cir.2002) (remanding for dismissal of damages claim under Younger abstention); Majors v. Engelbrecht, 149 F.3d 709, 714 (7th Cir.1998) (affirming the dismissal of a § 1983 damages claim on Younger abstention grounds when the specific relief requested in federal court was available in the state proceeding).
 The Tenth Circuit has also applied Younger abstention to a damages action and affirmed a district court's dismissal. Weitzel v. Div. of Occupational & Prof'l Licensing of the Dep't of Commerce, 240 F.3d 871 (10th Cir.2001) (affirming dismissal of § 1983 damages claims based on Younger abstention where the relief could be obtained in state court). But see Parkhurst v. Wyoming, 641 F.2d 775, 777-78 (10th Cir.1981) (per curiam) (reversing dismissal and remanding to ensure that district court's disposition would not cause the statute of limitations on plaintiff's claim to prevent recovery).
 
 
 [16]
 To stay, rather than dismiss, a claim for damages also serves the salutary purpose of averting problems with the statute of limitationsSee, e.g., Deakins, 484 U.S. at 203 n. 7, 108 S.Ct. 523.
 
 
 [17]
 Colorado River was concerned with the different problem of the contemporaneous exercise of concurrent jurisdiction by state and federal courts. The Court recognized that in these circumstances there are "principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations" that rest on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817, 96 S.Ct. 1236 (internal quotation marks and alteration omitted). Because of the federal courts'"virtually unflagging obligation" to exercise the jurisdiction given them, the circumstances allowing for dismissal of a federal suit based on such principles are "considerably more limited than the circumstances appropriate for abstention." Id. at 817-18, 96 S.Ct. 1236.
 
 
 [18]
 We do not foreclose the possibility of a unique case where damages are sought andYounger principles apply but dismissal is indicated for some other reason. A damages claim that is plainly frivolous, for example, might not save an action. Or, as Justice Kennedy suggests, there might be a case "where a serious affront to the interests of federalism could be averted in no other way." Quackenbush, 517 U.S. at 733, 116 S.Ct. 1712 (Kennedy, J., concurring).
 
 
 [19]
 Our review of the district court's decision thatYounger applies is de novo. Green, 255 F.3d at 1092-93.